285 So.2d 247 (1973)
MID-CONTINENT REFRIGERATOR COMPANY, Plaintiff-Appellant,
v.
Ross WILLIAMS, d/b/a Williams Grocery and Liquor, Defendant-Appellee.
No. 4237.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1973.
Rehearing Denied December 3, 1973.
*248 William E. Skye, Alexandria, for plaintiff-appellant.
Gahagan & Kelly, Marvin F. Gahagan, Natchitoches, for defendant-appellee.
Before HOOD, CULPEPPER and MILLER, JJ.
HOOD, Judge.
Ross Williams, d/b/a Williams Grocery and Liquor, instituted this action to enjoin the execution of a judgment which had been rendered against him on June 8, 1972, and to have that judgment decreed to be null and void. The defendants are Mid-Continent Refrigerator Company (the judgment creditor) and the Sheriff of Natchitoches Parish, Louisiana. The trial judge issued a temporary restraining order and a rule directing defendants to show cause why a preliminary injunction should not be granted. Mid-Continent filed a motion to dissolve the temporary restraining order.
After a hearing on the rule for a preliminary injunction and on the rule to dissolve the temporary restraining order, the trial judge rendered judgment on January 16, 1973, granting the preliminary injunction sought by Williams, decreeing the judgment previously rendered against him to be null and void as to the sum stated therein, and reducing the amount of said judgment from $4,585.00 to the sum of $393.00. Another judgment was rendered by the trial court on January 26, 1973, denying Mid-Continent's motion to dissolve the temporary restraining order. Mid-Continent has appealed from the last two mentioned judgments.
The issues presented are whether the trial court abused its discretion in issuing *249 the temporary restraining order and in granting the preliminary injunction sought by Williams; and whether it erred in decreeing that the judgment rendered earlier in favor of Mid-Continent and against Williams is null and void.
By written lease contract dated November 23, 1970, Mid-Continent leased to Williams two commercial-type refrigerator units. The lease was for a term of 48 months, and the contract provided that the lessee was to pay to Mid-Continent the sum of $131.00 per month, commencing on December 20, 1970, for a total of 48 installments. The lease contains the following provisions:
"14. Default: If lessee with regard to any item or items of equipment fails to pay any rent or other amount herein provided within ten (10) days after the same is due and payable, or if lessee with regard to any item or items of equipment fails to observe, keep or perform any other provision of this lease required to be observed, kept or performed by lessee, lessor shall have the right to exercise any one or more of the following remedies:
(a) To declare the entire amount of rent hereunder immediately due and payable as to any or all items of equipment, without notice or demand to lessee.
(b) To sue for and recover all rents, and other payments, then accrued or thereafter accruing, with respect to any or all items of equipment.
(c) To take possession of any or all items of equipment without demand or notice, wherever same may be located, without any court order or other process of law. Lessee hereby waives any and all damages occasioned by such taking of possession. Any said taking of possession shall not constitute a termination of this lease as to any or all items of equipment unless lessor expressly so notifies lessee in writing.
(d) To terminate this lease as to any or all items of equipment.
(e) To pursue any other remedy at law or in equity.
Notwithstanding any said repossession, or any other action which lessor may take lessee shall be and remain liable for the full performance of all obligations on the part of lessee to be performed under this lease.
All such remedies are cumulative, and may be exercised concurrently or separately. Waiver of any default shall not waive any other default."
Williams became delinquent in the payment of rentals due for the months of February, March and April, 1972. Mid-Continent thereupon instituted suit against Williams on May 11, 1972, demanding that a writ of sequestration be issued commanding the Sheriff to sequester the movable property affected by the lease, and that judgment be rendered condemning Williams to pay to Mid-Continent the balance of all rental payments, past and future, provided in the contract, with interest and attorney's fees, recognizing Mid-Continent as owner of the property sequestered, and ordering the Sheriff to deliver said property to Mid-Continent. The trial judge issued a writ of sequestration in response to the petition of Mid-Continent, and the property was sequestered on May 13, 1972. The record indicates that Williams has not had the use of the leased refrigeration equipment since it was sequestered. Mid-Continent states in its brief that the leased articles were delivered to it by the Sheriff on July 13, 1972.
Williams did not answer the petition, and on June 8, 1972, a default judgment was rendered against him (1) condemning Williams to pay to Mid-Continent the principal sum of $4,585.00, plus interest and attorney's fees; (2) maintaining the writ of sequestration which previously had been issued; (3) recognizing Mid-Continent as *250 owner of the leased movable property; and (4) ordering the Sheriff of Natchitoches Parish to deliver that property to Mid-Continent. No appeal has been taken from that judgment.
Mid-Continent caused a writ of fieri facias to issue on October 17, 1972, and as a step in the execution of that writ, the Sheriff of Natchitoches Parish seized some land owned by Williams. The tract of land seized was advertised for public sale to satisfy the judgment, the sale being scheduled for November 29, 1972.
On November 20, 1972, Williams filed the present suit demanding that a temporary restraining order be issued immediately, and that in due course a preliminary injunction be granted, restraining defendants from proceeding with the sale of his property under the writ of fieri facias. Williams also demanded in that action that the original judgment rendered in favor of Mid-Continent against Williams be decreed to be null and void, and that said original judgment be ordered cancelled from the records of Natchitoches Parish. A temporary restraining order was issued by the trial court, as sought by Williams. Mid-Continent then filed a motion to dissolve the temporary restraining order, praying also for attorney's fees for the alleged wrongful issuance of such an order.
A hearing was held on the rule directing Mid-Continent to show cause why a preliminary injunction should not be granted, and on the rule directing Williams to show cause why the temporary restraining order should not be dissolved. Following that hearing the two judgments which are before us on this appeal were rendered by the trial court. The judgment rendered on January 16, 1973, granted the preliminary injunction sought by Williams, and decreed that the judgment rendered on June 8, 1972, in favor of Mid-Continent "be and the same is hereby declared null and void as to the sum stated therein, and that the same be reduced to $393.00, together with legal interest from judicial demand until paid, and one-third of the aggregate amount of principal and interest as attorney's fees, and to remain in full force and effect in all other respects." The judgment rendered by the trial court on January 26, 1973, denied Mid-Continent's motion to dissolve the temporary restraining order.
Mid-Continent contends primarily that the pleadings filed by Williams constitute a collateral attack on the judgment which was rendered by the trial court on June 8, 1972. It argues that it is improper for Williams to use summary process, in the guise of a demand for a preliminary injunction, to attack the validity of that judgment.
The primary relief which Williams seeks in this action is a judgment decreeing the original judgment of June 8, 1972, to be null and void. The summary proceeding for a temporary restraining order and a preliminary injunction is incidental to this principal demand. We construe the action instituted by Williams to be a direct attack by ordinary process on the earlier judgment. We find, as will be pointed out later, that this issue has not been joined as to the principal demand, but that that circumstance does not change the nature of the suit. The action, in our opinion, is a direct attack on the earlier judgment. There is no merit, therefore, to Mid-Continent's argument that this action constitutes a collateral attack on a judgment of the trial court.
Williams bases his action to annul the earlier judgment on the ground that a lessor, upon showing that the lessee has violated the terms of the lease, may either repossess the leased property and waive future rentals or he may claim future rentals and waive repossession, but that the lessor cannot exercise both remedies. He contends that the judgment rendered by the trial court on June 8, 1972, is null and void because it awards the lessor all future rentals and at the same time it authorizes the lessor to repossess the leased property *251 during the term of the lease. He correctly points out that the judgment not only allows the lessor to repossess the leased property, but that it in fact orders the Sheriff to deliver the leased property to the lessor.
Mid-Continent concedes that Williams' statement of the law is correct, but it contends that that rule of law applies only "in the absence of a specific agreement between the parties to permit a landlord to sue for both future rental payments and possession of the leased premises." It argues that in this case the lease contract specifically provided that the lessor, Mid-Continent, could exercise both of those remedies, and that the earlier judgment of the trial court thus correctly condemned the lessee, Williams, to pay all future rentals and also to surrender the leased property to the lessor immediately.
The lessor is obligated to maintain the lessee in peaceable possession of the leased property during the continuance of the lease. LSA-C.C. Art. 2692. It is contrary to public policy, and would allow unjust enrichment of the lessor, to permit the lessor to violate the principal obligation he owes to the lessee, and at the same time to compel the lessee to perform the obligations he assumed under the lease.
The law is settled that a lessor, upon default of the lessee, has the option of either terminating the lease or of enforcing its provisions. If he elects to terminate the lease, he may repossess the leased property and enforce payment of the rent which had accrued and had not been paid up to the time the contract was terminated. If he elects to enforce the lease contract, he may demand payment of all future rentals, but he thereby waives his right to repossess the leased property and he remains obligated to continue the lessee in peaceable possession of the property during the continuance of the lease. Bill Garrett Leasing, Inc. v. General Lumber & Supp. Co., 164 So.2d 364 (La.App. 1 Cir. 1964); Executive Car Leasing Co. of New Orleans v. Alodex Corp., 265 So.2d 288 (La.App. 4 Cir. 1972); Henry Rose Mercantile and Manufacturing Co. v. Stearns, 154 La. 946, 98 So. 429 (1933).
In Henry Rose Mercantile & Manufacturing Co. v. Stearns, supra, our Supreme Court said:
"If the lessee fails to pay his rent as it matures, the lessor may hold him liable for the rent due for the expired term of the lease, and may sue to dissolve the contract and evict the lessee, or, if he should so elect, he may hold the lessee for the rent, both for the expired and the unexpired terms of the lease, and may sue accordingly. If, however, he elects to avail himself of the latter right, he elects to continue the contract in force, notwithstanding the default of the lessee in his payments, and thereby accords to the latter the right to remain on the premises and to use them in accordance with the terms of the lease, and continues in force the obligation imposed by law upon him to maintain the lessee in the peaceable possession of the property."
The facts and the issues presented in Bill Garrett Leasing, Inc. v. General Lumber & Supply Co., supra, are similar to the facts and issues presented in the instant suit. In that case, the First Circuit Court of Appeal held, correctly we think, that:
"The lessor in this case, having terminated the lease and brought about the eviction of the lessee and obtained full possession of the leased property, was not entitled to a judgment for the expired and unexpired terms of the lease but only for the former."
We are not convinced that the lease contract involved here actually authorizes the lessor to enforce both remedies, that is, to repossess the leased property and to collect future rentals. It is unnecessary for us to decide that issue, however, because we hold that if the lease contract is susceptible of such an interpretation, *252 then the provision which authorizes the lessor to employ both of the above mentioned remedies is unenforceable, as being contrary to the public policy of this state. LSA-C.C. Arts. 1893 and 1895.
We do not find, as argued by Mid-Continent, that the cases of Bill Garrett Leasing, Inc. v. General Lumber & Supply Co., supra, or the case of Executive Car Leasing of New Orleans v. Alodex Corp., supra, support the position taken by the lessor here. In both cases the courts recognized that a lessor will not be permitted to collect future rentals after he has evicted the lessee. And, in the Bill Garrett case, the court observed that contracts were to be enforced "as long as they do not contravene good morals and public policy."
Mid-Continent contends further that a judgment which orders the enforcement of a contract is valid and enforceable, even though the contract may have been null and void. It argues that in this case "the time to consider whether the judgment in question was null or not was before the judgment had been rendered enforcing it." The argument, basically, is that the judgment of the trial court rendered on June 8, 1972, has become final and cannot be reviewed now.
We agree that the issues presented here should have been raised in the trial court before judgment was rendered by that court on June 8, 1972. They were not raised at that time, however, and we presume that by now the delays allowed for appealing that judgment have elapsed. The present suit, however, is one to annul the judgment which was rendered at that time. Article 2004 of the Louisiana Code of Civil Procedure provides that "a final judgment obtained by fraud or ill practices may be annulled." We held in St. Mary v. St. Mary, 175 So.2d 893 (La.App. 3 Cir. 1965), that the cited article is broad enough to encompass a situation where a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right, and where the enforcement of that judgment would be inconscionable and inequitable. We believe that the petition filed by Williams in this case states a cause of action for the annulment of the judgment on the grounds of ill practices.
Although we think Williams' petition alleges a cause of action for the annulment of the judgment rendered on June 8, 1972, the record indicates that issue has never been joined as to the principal demand, and the case has never been tried on its merits. For that reason, we have concluded that the judgment of the trial court rendered on January 16, 1973, must be set aside insofar as it decrees the judgment dated June 8, 1972, to be null and void as to the sum stated therein, and insofar as it purports to reduce the amount of the award. The case will be remanded to the trial court for a trial on the merits or for further proceedings consistent with the views herein expressed.
We find no merit to Mid-Continent's argument that Williams is barred from maintaining this action because of laches. The argument is that Williams was guilty of laches in failing to file this action for injunctive relief "at the time the writ of fieri facias was issued," which was October 17, 1972, so that the matter could be tried and decided before November 29, 1972, the date scheduled for the sale.
We are not convinced that the issues presented here could have been disposed of prior to the date scheduled for the sale, even if Williams' petition had been filed as early as Mid-Continent feels it should have been instituted. Regardless of whether it could have been finally decided before that date, however, we find that there was no unreasonable delay on the part of Williams in seeking the relief which he prays for here, and that Williams thus is not barred by laches from maintaining this action.
*253 Mid-Continent also contends that Williams has acquiesced in the judgment, and that for that reason he is now estopped from contesting the validity of that judgment. It argues that Williams acquiesced in the judgment because he executed the lease contract of his own free will and accord, he failed to answer the suit instituted against him by Mid-Continent, and he allowed the leased property to be picked up by Mid-Continent without objection.
We do not find that Williams voluntarily acquiesced in the execution of the judgment. It is true that he made no appearance in the original suit before judgment was rendered, and that he did not resist, physically or by legal proceedings, the sequestration of the leased property. He, however, has never questioned, and he does not now contest, Mid-Continent's right to terminate the lease and to repossess the leased property. He questions only its right to collect future unearned rental payments after it has repossessed the leased property. The filing of the instant suit shows that he has not acquiesced in the execution of that part of the judgment rendered on June 8, 1972, which condemns him to pay future rentals after the leased property was repossessed by the lessor.
We find no merit to Mid-Continent's argument that Williams has acquiesced in the judgment and thus is estopped from attacking it.
We have held that Williams' petition states a cause of action for the annulment, at least in part, of the judgment rendered on June 8, 1972. Since the execution of that judgment would cause Williams irreparable injury, there was no error on the part of the trial judge in issuing a temporary restraining order and in granting a preliminary injunction prohibiting the sale of Williams' property pending the trial of this case on its merits.
For the reasons assigned, the judgment rendered by the trial court on January 26, 1973, denying Mid-Continent's motion to dismiss the temporary restraining order, is affirmed. The judgment appealed from, rendered on January 16, 1973, is affirmed insofar as it grants to Williams a preliminary injunction prohibiting Mid-Continent from proceeding with the sale of Williams' property pending this suit. In all other respects the judgment of the trial court rendered on January 16, 1973, is set aside, and the case is remanded to the district court for trial and for judgment on the merits, or for other proper proceedings consistent with the views herein expressed. The costs of this appeal are assessed to plaintiff-appellant, Mid-Continent Refrigerator Company. All other costs are to be assessed when the case is tried on its merits.
Affirmed in part, set aside in part and remanded.