FRANK NERO AUTO LEASE, INC., APPELLEE, *v.*
TOWNSEND, APPELLANT.

(No. 37896—Decided May 17, 1979.)

*Messrs. Roemisch & Wright* and *Mr. David G. Mack,* for
appellee.

*Mr. George S. Coakley,* for appellant.

PARRINO, P. J.   The defendant-appellant (lessee) entered
into a "Motor Vehicle Rental Agreement," on April 15, 1975,
with the plaintiff-appellee (lessor). The subject of the agree-
ment was a 1975 Lincoln Mark IV. The agreement was to run

for 36 months. The lessee was to pay the lessor $266.48 per month. The lessee agreed to return the vehicle at the end of the lease term"***in good repair, ordinary wear excepted.***"

As of January 1, 1976, defendant, the lessee, was in default in the amount of $1,096.22.[1] Because of this default, plaintiff, the lessor, repossessed the vehicle on February 20, 1976. Repairs in the amount of $879.82 were made by plaintiff to make the car saleable. The car was sold by plaintiff on May 24, 1976, for $7,000.

An action was filed in Bedford Municipal Court on May 12, 1976, to collect $4,773.37 due under the lease agreement.[2] Following trial, plaintiff was awarded $3,108.62, costs and interest.

Upon the defendant's request for findings of fact and conclusions of law, the trial court concluded, in part:

"1. The measure of damages in breach of contract situations includes all rent payments not made pursuant to the terms of said contract, taking into consideration mitigation on the plaintiff's part, any interest chargeable to the plaintiff because of defendant's breach of said agreement and any damages done to said vehicle by the defendant."

It is from that judgment that the defendant brings the instant appeal, citing two assignments of error:

"I. The trial court erred in its conclusion of law that the measure of damages applicable in the default of a motor vehicle leasing contract containing a rental acceleration clause 'includes all rent payments not made pursuant to the terms of said contract, taking into consideration mitigation on the plaintiff's part, any interest chargeable to the plaintiff because of defendant's breach of said agreement and any damages done to said vehicle by the defendant.'

"II. The trial court erred in rendering a judgment in favor of plaintiff in the amount of $3,108.62 plus interest from February 20, 1976 because said amount is unsubstantiated by the facts and contrary to law."

---

[1] $1,088.22 represented unpaid rental payments. $8 represented a parking ticket incurred by the lessee and paid by the lessor.

[2] It is unclear what this amount represents. It is less than the total rent, but greater than the unpaid accrued rent plus the costs of repairs.

Since defendant makes one argument, his two assignments of error will be considered together. Defendant's primary contention is that the standard the trial court used in determining damages under an automobile lease is too vague, and that the only damages for which defendant can be held liable are those unpaid rental payments which had accrued at the time of repossession.

The default clause in the lease agreement permits the lessor to: (1) accelerate the entire amount of rentals due under the lease; (2) repossess the vehicle; (3) terminate the lease; (4) pursue any other remedy existing at law or equity; and (5) collect interest on any unpaid rental payments.[3] The lease also requires the car to be returned "in good repair, ordinary wear excepted." In addition, the lease agreement provides that the lessee is to be held to all of his obligations under the lease notwithstanding any action taken by the lessor. The measure of damages used by the trial court allows for repossession of the motor vehicle and the acceleration of future rents as provided by the terms of this default clause. The question becomes whether this measure of damages is permissible under the laws of Ohio. The question of the proper measure of damages under a motor vehicle lease agreement appears to be one of first impression in Ohio.

The issue we first must determine in this cause is whether

---

[3] The default clause reads, in part, as follows:

"10. *Default.* Default shall exist if customer fails to pay any installment of rent within ten days after the same becomes due and payable or fails to observe or perform any other of the terms or provisions hereof***, whereupon in any such event owner may exercise any one or more of the following rights and remedies: (i) declare the entire amount of rent due hereunder immediately due and payable as to any or all vehicles, without notice or demand to owner; (ii) sue for and recover all rents and other payments, then accrued or thereafter accruing, with respect to any or all vehicles; (iii) take possession of any or all vehicles without demand or notice, without Court order or other process at law and without incurring any liability to customer for any damages occasioned by such taking, (iv) terminate this lease as to any of the vehicles, or (v) pursue any other remedy now or hereafter existing at law or in equity. Customer shall pay owner all costs and expenses including attorney fees, incurred by owner in exercising any of its rights or remedies hereunder and notwithstanding any such action taken by owner, customer shall remain liable for all of customer's obligations hereunder. In the event customer fails to make any payment provided under this lease within ten days after the due date thereof, customer shall pay the owner interest on such delinquent payment from the due date thereof until paid at the highest rate permitted by law.***"

clauses in chattel lease agreements permitting both repossession of the chattel and acceleration of future rents are valid in Ohio. The chattel involved in the instant action is a motor vehicle. As a general rule, parties are bound by the provisions of their contracts. However, where the damage provision is punitive rather than compensatory, it violates public policy and will not be enforced because it bears no reasonable relationship to the damages actually incurred. See *Miller* v. *Blockberger* (1924), 111 Ohio St. 798; *American Financial Leasing* v. *Miller* (1974), 41 Ohio App. 2d 69.

While Ohio courts have not ruled directly on the validity of a damage clause permitting the lessor to repossess the leased chattel and accelerate rents, other jurisdictions have refused to recognize similar provisions because the damage clause does not reflect the lessor's actual damages. See, *e.g., Puritan Leasing Co.* v. *August* (1976), 16 Cal. 3d 451, 546 P. 2d 679; *Triple C. Leasing, Inc.,* v. *All-American Mobile Wash* (1976), 64 Cal. App. 3d 244, 134 Cal. Rptr. 328; *Konner Rental Corp.* v. *Pedone* (1966), 50 Misc. 2d 69, 269 N.Y.S. 2d 463; *Garber's Auto Rental, Inc.,* v. *Genoa Packing Co.* (1974), 2 Mass. App. 298, 311 N.E. 2d 589; *United States Leasing Corp.* v. *Smith* (Tex. App. 1977), 555 S.W. 2d 766; *American Lease Plan* v. *Ben-Kro Corp.* (Tex. App. 1974), 508 S.W. 2d 937. This is particularly true where there is no requirement that the lessor resell or relet the chattel to mitigate the lessee's obligation. See, *e.g., Chandler Leasing Division* v. *Florida-Vanderbilt Dev. Corp.* (C.A. 5, 1972), 464 F. 2d 267, *certiorari denied,* 409 U.S. 1041; *Bidwell* v. *Carstens* (Fla. 1975), 316 So. 2d 264; *Puritan Leasing Co.* v. *August, supra; Southwest Park Outpatient Surgery, Ltd.,* v. *Chandler Leasing Division* (Tex. App. 1978), 572 S.W. 2d 53; *H. A. Steen Industries, Inc.,* v. *Richer Communications, Inc.* (1973), 226 Pa. Super. 219, 314 A. 2d 319; *Industrial Leasing Corp.* v. *Thomason* (1974), 96 Idaho 574, 532 P. 2d 916.

In the instant case, the motor vehicle lease agreement allows the lessor to repossess the automobile as well as accelerate future rents upon the lessee's default. There is no provision requiring the lessor to mitigate damages. To the contrary, the default provision permits the lessor to regain possession of the leased motor vehicle, relet or resell the motor vehicle and collect rents for the entire period of the lease. This

clause enables the lessor to receive a double payment for the leased motor vehicle and bears no reasonable relationship to damages actually sustained. Damage clauses which bear no reasonable relationship to the damages incurred are contrary to Ohio's public policy. Consequently, we find that the default clause is invalid and unenforceable.

Our second consideration is the proper measure of damages to be applied where the contractual remedy fails. Other courts have analyzed chattel lease agreements in light of: (1) real property law principles; see, *United States Leasing Corp.* v. *Keiler* (La. App. 1974), 290 So. 2d 427; *Mid-Continent Refrigerator Co.* v. *Williams* (La. App. 1973), 285 So. 2d 247; *Bill Garrett Leasing, Inc.*, v. *General Lumber & Supply Co.* (La. App. 1964), 164 So. 2d 364; *Chandler Leasing Division* v. *Florida-Vanderbilt Dev. Corp.*, *supra*, *certiorari denied*, 409 U.S. 1041; *Cutler Gate Building Corp.* v. *United States Leasing Corp.* (Fla. App. 1964), 165 So. 2d 207; *Morris Plan Leasing Co.* v. *Karns* (1966), 197 Kan. 150, 415 P. 2d 291; *Industrial Leasing Corp.* v. *Thomason*, *supra;* (2) bailment principles; see, *Merchants Leasing Co.* v. *Clark* (1975), 14 Wash. App. 317, 540 P. 2d 922; or, (3) a combination of the two concepts; *American Lease Plan* v. *Ben-Kro Corp.*, *supra*. Compare *Lamson Consol. Store Service Co.* v. *Bowland* (C.A. 6, 1902), 114 F. 639 with *Pan-American Petroleum Transp. Co.* v. *Robins Dry Dock & Repair Co.* (C.A. 2, 1922), 281 F. 97, *certiorari denied*, 259 U.S. 586.

The traditional real property law in many states is that the lessor may not evict the lessee from the premises and at the same time recover unaccrued rents. See, *e.g.*, *United States Leasing Corp.* v. *Keiler*, *supra; Cutler Gate Building Corp.* v. *United States Leasing Corp.*, *supra; Morris Plan Leasing Co.* v. *Karns*, *supra.* Cases applying this principle reason that the two remedies, continued payment under the lease and repossession of the chattel, are inconsistent and the lessor must elect his remedy either by permitting the lessee to retain possession and enforce the lessee's obligation to pay rent under the terms of the lease or by acting in derogation of the lease and ousting the lessee from possession. This rationale applies equally to cases resting on a bailment theory. *Lamson Consol. Store Service Co.* v. *Bowland*, *supra.*

A second theory supports this result in bailment cases.

That is, in the absence of a contractual provision to the contrary, the bailee's obligation to maintain the chattel terminates when the bailor regains possession of the chattel. See, *id.; Pan-American Petroleum Transp. Co.* v. *Robins Dry Dock & Repair Co., supra.* Therefore, the bailee's duty to pay rent and maintain the chattel ceases when the bailor regains it.

The existence of a valid damage clause controls the remedies available to the lessor in chattel lease cases in most jurisdictions. Louisiana courts, however, have consistently refused to recognize an agreement permitting the lessor to both retake the chattel and collect rents, reasoning that the pursuit of two inconsistent remedies is against the state's public policy, *United States Leasing Corp.* v. *Keiler, supra; Mid-Continent Refrigerator Co.* v. *Williams, supra;* see, *Bill Garrett Leasing, Inc.,* v. *General Lumber & Supply Co., supra.*

Nevertheless, the weight of authority recognizes the right of the parties to contractually provide for repossession and the acceleration of future rents where the stated damages bear a reasonable relationship to actual damages or where the lessor has an obligation to mitigate damages by reselling or reletting the leased chattel. *Puritan Leasing Co.* v. *August, supra; Bidwell* v. *Carstens, supra; Garber's Auto Rental, Inc.,* v. *Genoa Packing Co., supra,* 311 N.E. 2d 589; *Southwest Park Outpatient Surgery, Ltd.,* v. *Chandler Leasing Division, supra.* See *Morris Plan Leasing Co.* v. *Karns, supra; Merchants Leasing Co.* v. *Clark, supra; Industrial Leasing Corp.* v. *Thomason, supra.*

We will now analyze these principles in light of Ohio law. In Ohio, the rental of an automobile creates a bailment relationship between the parties. *Orose* v. *Hodge Drive-It-Yourself Co.* (1937), 132 Ohio St. 607, 613. Since we find no Ohio bailment law specifically relating to the issue at bar and no such authority has been cited to us, we will examine the measure of damages in terms of general bailment principles and look to Ohio's real property law for purposes of analogy, as have other states. We will apply these general principles governing chattel leases to motor vehicle lease agreements.

Both the bailment and real property approaches lead to the same result. General bailment principles do not permit the bailor to retake the bailed chattel and also demand continued performance by the bailee in the absence of an agreement to

the contrary. See *Lamson Consol. Store Service Co.* v. *Bowland, supra; Pan-American Petroleum Transp. Co.* v. *Robins Dry Dock & Repair Co., supra.*

Similarly, Ohio's common law real property principles do not permit a lessor to oust the lessee from possession and also demand payment of future rents in the absence of an agreement to the contrary. *Cain* v. *Brown* (1922), 105 Ohio St. 264. Implicit in these decisions is the acknowledgement that contractual provisions providing for both repossession and the acceleration of future rents will be enforced as long as they do not impose a penalty. This is consistent with the weight of authority in other jurisdictions.

In the determination of the instant case, the trial judge permitted repossession and the acceleration of future rents, but took the lessor's mitigation into consideration to reduce the amount of future rents due. Yet, there is no authority in the lease agreement to permit consideration of mitigating factors. The damage provision is unenforceable precisely because it fails to bear a reasonable relationship to the actual damages incurred. Where the contractual provision fails, the measure of damages is governed by the common law principles of bailment and real property; the lessor may enforce the agreement and collect future rents or terminate the agreement and repossess the motor vehicle.

In light of the foregoing, this court holds that where a motor vehicle is repossessed by a lessor, the obligation to pay unaccrued rent is terminated. However, where the parties agree to a provision which calls for acceleration of all rents and repossession upon default, such provision will be enforced where it requires the lessor to either resell or relet the motor vehicle in mitigation of the lessee's deficiency. Absent a damage provision that bears a reasonable relationship to the actual damages incurred by the lessor, provisions that call for repossession plus acceleration of all unaccrued rents under the lease will not be enforced.

Where a motor vehicle is leased and there is no provision in the lease agreement for the payment of unaccrued rents, or where a provision in a lease for the payment of unaccrued rents is invalid, the formula for calculating damages where the motor vehicle is repossessed is all unpaid rent which has ac-

crued at the time of repossession, interest on those accrued rental payments and costs of repossession.[4]

*Judgment reversed*
*and cause remanded.*

KRUPANSKY and PATTON, JJ., concur.

---

[4] The motor vehicle lease agreement provides in a separate clause, that the lessee shall return the motor vehicle "***at the end of the leased term in good repair, ordinary wear excepted." This provision is unaffected by our finding that the default clause is unenforceable since this provision concerns the condition of the motor vehicle upon return and is unrelated to the default clause.