**Walton Commercial Enterprises, Inc.**
v.
**Associations, Conventions, Tradeshows, Inc.**
*[Cite as 8 AOA 602]*

*Case No. 90AP-581*
*Franklin County, (10th)*
*Decided December 31, 1990*

*James A. Meaney, Crabbe, Brown, Jones, Potts & Schmidt, Appellants.*

*Robert M. Morrow, Means, Bichimer, Burkholder & Baker Co., L.P.A., for Appellee.*

McCORMAC, J.

Plaintiff-appellant, Walton Commercial Enterprises, Inc., appeals from the judgment of the Franklin County Municipal Court awarding partial relief to appellant in the amount of $1,856.80 on its complaint filed against defendant-appellee, Associations, Conventions, Tradeshows, Inc. Appellant raises the following assignments of error:

"I. THE MUNICIPAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO AWARD JUDGMENT IN FAVOR OF APPELLANTS FOR THE FULL AMOUNT OF THE MONTHLY RENTAL CHARGE FOR THE COMPUTER EQUIPMENT LEASED TO APPELLEE AFTER THE EQUIPMENT WAS STOLEN FROM APPELLEE'S PREMISES WHEN APPELLEE FAILED TO PAY THE REPLACEMENT VALUE OF THE EQUIPMENT OR RETURN THE STOLEN EQUIPMENT TO APPELLANTS.

"II. THE MUNICIPAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO AWARD JUDGMENT IN FAVOR OF APPELLANTS FOR ATTORNEY'S FEES AND EXPENSES OF THE LITIGATION WHEN THE RENTAL AGREEMENT BETWEEN THE PARTIES PROVIDED FOR THE PAYMENT OF SAME.

"III. THE MUNICIPAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO PERMIT APPELLANTS TO PROCEED WITH THE FULL TRIAL OF THE MATTER AND COMPELLING THE PARTIES TO STIPULATE TO THE REMAINDER OF THE FACTS TO BE PRESENTED TO THE COURT.

"IV. THE MUNICIPAL COURT COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION BY SPLITTING THE COURT COSTS BETWEEN THE PARTIES BASED UPON THE COURT'S UNDERSTANDING OF PRIOR SETTLEMENT NEGOTIATIONS."

Appellant is the parent company of PCR of Columbus, Inc., which is in the business of leasing computer equipment to various entities on a short-term basis. Sometime in early

1989, a representative of appellee contacted appellant regarding the leasing of computer equipment for an upcoming convention to be held in Columbus. It appears that the two parties had conducted business before and were familiar with each other. Pursuant to an oral understanding, appellant delivered computer equipment to appellee in early February 1989. Either on the day of, or the day after delivery, a standard form rental agreement was transmitted to appellee. The form states that it was executed pursuant to a phone order and no signature appears in the place designated for appellee to sign.

Appellee made timely payments of $200 per month for the months of February and March according to the terms of the agreement. However, on or about March 28, 1989, a burglary occurred at appellee's office and the rental equipment was stolen. Appellee notified appellant and the two parties cooperated in pursuing a claim under appellee's insurance policy. After the theft, appellee ceased making rental payments even though appellant continued to invoice appellee requesting payment. In August 1989, appellee received payment on its insurance claim and tendered payment to appellant in the amount of $1,856.80, representing the replacement value of the stolen equipment. Appellant refused to accept the payment but continued to invoice appellee for monthly rental charges.

Prior to appellee's tender of payment, appellant commenced suit seeking the replacement value of its equipment and accrued rental payments under the terms of the lease. The trial court permitted the testimony of appellant's president and then requested the parties to proffer the remainder of their evidence in lieu of further live testimony. The trial concluded with both parties entering a proffer into the record without objections to the court's suggested procedure. Ultimately, the trial court held that appellant was entitled to judgment for the replacement value of the stolen equipment but not for any accrued rents incurred after the theft. Judgment was entered accordingly with the costs split between the parties.

By its first assignment of error, appellant contends that the trial court erred by failing to award accrued rental payments. Appellant argues that, by the terms of the lease, appel-lee is responsible for the loss of the equipment and any rent due thereunder until the equipment is returned. Appellee does not dispute that it assumed the risk of loss but, rather, contends that it is not bound by the written agreement upon which appellant relies.

Appellee argues that an oral agreement was reached prior to the receipt of the preprinted form invoice and that, because no agent of appellee signed the agreement, it cannot be bound by its terms. Appellee proffered the testimony of its agent, Ruth Staat, to the effect that the only matters orally discussed were the length of the rental period and the monthly charge. No discussion occurred as to what appellee's obligations would be if the equipment was lost or destroyed.

A similar fact pattern was before the Supreme Court in *Richard A. Berjian, D.O., Inc., v. Ohio Bell Tel. Co.* (1978), 54 Ohio St. 2d 147. In *Berjian,* the plaintiff sought to hold the defendant liable for a negligent telephone directory listing. Oral communications between the parties concerned the proper placement of an ad but did not address specific terms of the agreement. Prior to the directory publication, defendant sent plaintiff a copy of its standard directory advertisement agreement with a card calling the terms of the agreement to plaintiff's attention. Plaintiff never executed the agreement and subsequently an incorrect ad was run.

The court, in holding that a limitation of liability clause contained in the agreement was valid and enforceable despite the lack of an acknowledging signature by plaintiff, stated:

"Although in the usual situation an offeror cannot cause the silence of the offeree to constitute an acceptance, where the relation between the parties justifies the offeror's expectation of a reply, such silence may constitute an acceptance on the part of the offeree. See 1 Williston on Contracts (3 Ed. 1957), 319, Section 91; Restatement of Contracts 2d 142, Section 72 (1)(c), (Tent. Draft Nos. 1-7, 1973)." *Id.* at 152.

Section 69(2) of the Restatement of Contracts, formerly Section 72(2) of the tentative drafts cited in *Berjian,* allows the same conclusion even if we conclude that there were insufficient prior business dealings between the parties herein. Section 69(2) provides:

"(2) An offeree who does any act inconsistent with the offeror's ownership of offered property is bound in accordance with the offered terms unless they are manifestly unreasonable. But if the act is wrongful as against the offeror it is an acceptance only if ratified by him."

Appellee argues that, even if the printed contract is applicable, its terms are ambiguous in regard to appellee's obligations for failure to return the leased equipment. That argument is not valid. The provision for loss provides for indemnification by appellee for the replacement of the property. The provision for rental requires payment by appellee until the property is made available for return (or by implication indemnification is made for lost equipment). Appellant was being paid for the value of use of its property. That valuable right was lost until the property was returned or payment was made for the property. The term of the lease by provision of the contract continued until one of these events occurred.

Appellant's president testified that the longest lease term available was one month and that, by paying for a subsequent month, the client is merely renewing the terms of the initial lease. This testimony is supported by plaintiff's exhibit 2 and defendant's exhibit A, both of which were monthly invoices paid by defendant, which state that the rental period is one month. Therefore, even if appellee did not originally agree with the terms of the contract contained in the invoice, appellee not only failed to voice its rejection but affirmed the agreement by submitting its payment on the second invoice.

In basic contract terms, the first invoice would represent a counteroffer from appellant to appellee which appellee accepted by tendering payment. Because of the term provision, a new offer and acceptance would need to be made each month. This was done by transmittal of the second invoice which appellee accepted by making payment.

Even without a valid written agreement, assuming that the terms upon which appellant relies do impose a duty upon appellee to continually pay rental charges, application of fundamental common-law contract principles result in the same conclusion. A lease for personal property is merely an agreement creating a common-law bailment for hire that mutually benefits both parties. Consequently, common-law principles of bailment apply. *Buel Stone Corp. v. Buckeye Aeration Serv.* (Jan. 31, 1985), Franklin App. No. 84AP-440, unreported (1985 Opinions 240). Therefore, the bailee or lessee is under a strict duty to return the bailed goods at the expiration of the term of bailment. If this is not done, the lessee is strictly liable for damages incurred by the bailor/lessor. Under the alleged oral contract asserted by appellee, the equipment was to be leased for a two to three month period at a rate of $200 per month. At the end of that period, appellee was not in possession of the equipment and did not tender payment for the equipment's value. Therefore, appellee must be held liable for the damages appellant sustained by not being able to re-let the equipment. In this case, the parties negotiated the fair rental value to be $200 per month. See *Master Lease of Ohio, Inc. v. Andrews* (1984), 20 Ohio App. 3d 217, 219.

While a different issue was presented, the court's discussion of common-law bailment principles in *Frank Nero Auto Lease v. Townsend* (1979), 64 Ohio App. 2d 65, is illustrative. The *Townsend* court stated:

"That is, in the absence of a contractual provision to the contrary, the bailee's obligation to maintain the chattel terminates when the bailor regains possession of the chattel. [Citations omitted.] Therefore, the bailee's duty to pay rent and maintain the chattel ceases when the bailor regains it.

"***

"In light of the foregoing, this court holds that where a motor vehicle is repossessed by a lessor, the obligation to pay unaccrued rent is terminated. ***" *Id.* at 70, 71.

Therefore, by necessary implication, *Townsend* also stands for the principle that, until the chattel is retaken by the lessor, the lessee's obligation to pay rent continues. In the present action, since the equipment could not ever be returned, appellee's duty to pay rent continued until appellee's tender of the monetary value of the equipment. Since the trial court did not rule in this manner, the exact date of appellee's attempted payment was not determined. Upon remand, the trial court is instructed to determine the date of tender and prorate accrued rent owing to appellant accordingly.

Appellant's first assignment of error is sustained.

Appellant secondly argues that the trial court erred by failing to award appellant attorney fees pursuant to the terms of the written agreement. However, the general rule in Ohio is that attorney fees are not recover-

able as costs in a contract action. *Allen v. Standard Oil Co.* (1982), 2 Ohio St. 3d 122; *Gates v. Toledo* (1897), 57 Ohio St. 105.

As the Supreme Court has stated in *Gahanna v. Eastgate Properties, Inc.* (1988), 36 Ohio St. 3d 65, 66:

"*** Generally, a prevailing party may not recover attorney fees as costs of litigation in the absence of statutory authority unless the breaching party has acted in bad faith, vexatiously, wantonly, obdurately or for oppressive reasons. ***"

Appellant has failed to show that appellee acted in bad faith; while there are some exceptions to this general rule, appellant has cited no authority qualifying him for the benefit of an exception. See *Motorists Mutual v. Trainor* (1973), 33 Ohio St. 2d 41; *Allen, supra.* We are not persuaded that the contractual provisions imposing attorney fees are sufficiently clear and unambiguous to allow fees to be assessed against appellee in this situation.

Appellant's second assignment of error is overruled.

Appellant next contends that the trial court erred by requiring the parties to proffer their testimony in lieu of further live witnesses after appellant's first witness had testified.

In order to preserve this argument for appeal, it was incumbent upon appellant to object to the procedure employed by the trial court. The record indicates that neither party offered an objection to the trial court's suggestion at any time. Furthermore, we fail to see how appellant has been prejudiced by the procedure used. The testimony of appellant's sole witness and the exhibits introduced were sufficient to make appellant's case. Also, the proffer permitted this court to review any potential evidence that might have been necessary. Appellant has failed to show plain error or prejudice by the trial court's attempt to shorten the proceedings.

Appellant's third assignment of error is overruled.

Appellant finally contends that the municipal court erred by splitting the cost of the action between the parties. Appellant maintains that the court assessed some of the costs against appellant as a form of punishment for appellant's failure to accept a prior settlement offer.

Civ. R. 54(D) governs the award of costs and provides:

"Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs."

Generally, costs will be assessed to the prevailing party; however, the rule does not grant an absolute right to appellant to recover his costs. *State, ex rel. Gravill, v. Fuerst* (1986), 24 Ohio St. 3d 12. A trial court is granted some discretion in the amount and division of court costs. In the present case, there are two possible explanations for the trial court's action concerning costs. Either the trial court was imposing a penalty for appellant's failure to settle, which is in some measure supported by the trial court's comments on the record, or, since appellant was awarded only partial relief, the court reasoned that both parties prevailed and hence, costs should be split accordingly. By sustaining appellant's first assignment of error and overruling the trial court's legal conclusion, we have rendered either rationale unsupportable and hence, it was an abuse of discretion not to assess costs against appellee.

On appeal, appellant has prevailed on its claim for accrued rents and thereby, validated its decision not to settle. Likewise, there is now only one prevailing party and a split of cost under that theory has been rendered incorrect. Regardless of why the trial court did what it did, there is nothing that convinces us that unusual circumstances justify a departure from the general rule that the prevailing party should be awarded costs.

Appellant's fourth assignment of error is sustained.

Appellant's second and third assignments of error are overruled. Appellant's first and fourth assignments of error are sustained. The judgment of the trial court is reversed and the case is remanded with instructions to determine the date on which appellee offered payment to appellant of the value of the leased property and to calculate rent at the rate of $200 per month from April 1, 1989 until that date, including a prorated share of the monthly rent for any partial month, and to add that amount to the judgment for the value of the leased property which was previously entered and which is not in dispute.

*Judgment reversed and case remanded with instructions.*

REILLY, P.J., and WILSON, J., concur.

WILSON, J., of the Champaign County Common Pleas Court, sitting by assignment in the Tenth Appellate District.