**NATIONAL ENTERPRISES, INC., Plaintiff,**

v.

**Paul SMITH, Defendant.**

No. 94–72839.

United States District Court, E.D. Michigan, Southern Division.

Jan. 11, 1996.

Morgan J. Scudi, Huth, Lynett and Scudi, San Diego, CA, Michael J. Lynett, Huth, Lynett & Scudi, Detroit, MI, for Plaintiff.

Stephen J. Safranek, Detroit, MI, for Defendant.

## OPINION AND ORDER

### I. *Background*

FEIKENS, District Judge.

On June 29, 1987, Defendant entered into an Open End Vessel Lease with First Federal Savings & Loan Association ("First Federal") of Toledo, Ohio for a new Viking forty-four foot motor yacht. During the term of the lease, First Federal failed and was taken over by the Resolution Trust Corporation ("RTC"). Still later, RTC sold and assigned all of its rights, title and interest in the lease to Plaintiff.

Pursuant to the lease agreement, Defendant was required to make monthly payments of $2,956.07 plus tax for a period of 180 months. Defendant made the first 77 of these payments but stopped in October of 1992, thereby defaulting on the lease. Plaintiff subsequently took possession of the vessel and sold it. At issue is what other remedies are provided Plaintiff by the lease agreement and Ohio law.

The parties agree that paragraph 18 of the lease agreement governs their dispute.[1]

---

1. Paragraph 18 of the subject lease provides in pertinent part:

    18. EARLY TERMINATION OR DEFAULT
    (a) Provided you are not in default you may terminate this Lease before the end of the Lease under the following conditions: No termination will be permitted during the first (24) months of the Lease. Thereafter you must make a written request to terminate to us. Your request may be approved or disapproved at our option:

(b) We may terminate this Lease before the end of the term under the following conditions which may also constitute default hereunder:
    (1) You do not make a payment when due;

\* \* \* \* \* \*

If you are in default, we will have all the rights and remedies provided by law. We will have the right to terminate the Lease and take the Vessel without demand and to sue you for damages. To take it, we may enter the premises where the Vessel is stored and remove it.

Both parties moved for summary judgment and the appropriate papers were filed. Oral argument was heard on November 27, 1995, after which I held an evidentiary hearing on December 14, 1995. I conclude that neither party has properly calculated the damages for Defendant's breach and award Plaintiff $140,929 plus ten percent simple interest on those lease payments due on the date of judgment.

## II. *Contentions of the Parties*

Plaintiff argues that the lease provides for separate remedies for default and early termination of the lease. Plaintiff contends that Defendant, in failing to make all payments due, defaulted on the lease and that default is governed by paragraph 18(b) of the lease agreement. In short, Plaintiff argues that subsection 18(b) provides its relief to be the outstanding 102 monthly lease payments owed *plus* the estimated agreed value of the vessel *less* the sale price of the vessel after costs have been deducted:

| | | |
|---|---|---|
| | Outstanding 102 lease payments | $313,579 |
| + | Estimated agreed value of the vessel | $165,000 |
| − | Sale price less costs | $166,500 |
| | TOTAL: | $312,079 |

Plaintiff argues that this calculation of its damages rightfully provides it with the benefit of its bargain, citing *Rhodes v. Rhodes Indust., Inc.*, 71 Ohio App.3d 797, 595 N.E.2d 441, 448 (1991). In addition to the benefit of the bargain, Plaintiff also requests interest on the money it is owed and attorney fees.

> We may take any property in the Vessel at the time of retaking and hold it for you. Our retaking of the Vessel does not release you from any obligation under the Lease.
> (c) There are no penalty charges for early termination. Upon such termination we will calculate the remaining balance due of the initial value of the Vessel using the SIMPLE INTEREST method. You will owe us the remaining balance due, any other charges for which you are responsible, and the reasonable cost of repossession, including legal fees and court costs. From that amount we will subtract the amount of your security deposit, any insurance proceeds we receive, and the price for which we can sell the Vessel after such termination, less reasonable expenses of sale.
> Since your obligation at early termination is dependent upon the value of the Vessel at the end of the Lease term, if you disagree with the value we assign to the Vessel you may obtain, at your own expense, a professional appraisal

Defendant argues that the lease provides for the same remedies whether there is early termination or default and that Paragraph 18(c) of the lease governs Plaintiff's remedies in both instances. Consequently, Defendant contends that Defendant owes the principal due on the lease at the time of breach *plus* simple interest *less* Defendant's security deposit *and* the value of the vessel at the time of breach:

| | | |
|---|---|---|
| | Principal outstanding at time of default: | $228,063 |
| + | Simple interest | $8,020 |
| − | Security deposit | $6,150 |
| − | Value of Boat at Default | $235,000 |
| | TOTAL: | [$5,067] |

In support of his argument, Defendant offers several documents which purport to show that First Federal of Toledo, the RTC, and even Plaintiff have shared this interpretation of the lease. From First Federal, Defendant presents a "payoff sheet" which provides the amount he would have had to pay in order to payoff the lease in December 1992. Similarly, from the RTC, Defendant provides two letters which establish a payoff amount that would have "settle[d] the account and release[d] the yacht." Finally, Defendant offers a letter from the Plaintiff's collection manager, Jon Fleming, who wrote Defendant on November 10, 1994. In that letter, Fleming stated that Defendant was in default of the lease agreement for nonpayment and that Plaintiff had terminated the lease. Fleming then stated that Defendant's obligation under the lease was governed by Paragraph 18 of the lease. He then quoted paragraph 18(c) in its entirety.[2]

of the wholesale value of the Vessel from an independent third party, agreeable to both of us. This appraised value shall then be used at the actual value.

2. In addition to the arguments discussed above, Defendant raises two other arguments. Both are without merit. First, Defendant argues that the Ohio Lease Purchase Agreements Act, Ohio Rev. Code § 1351 *et seq,* requires Defendant be paid $21,308.69 in damages plus reasonable attorney fees. The details of this argument need not be entertained because the statute specifically provides that it does not apply to lease agreements pertaining to "a motor vehicle as defined in section 4501.01 of the Revised Code." Ohio Rev.Code § 1351.01(F)(4). Motor yachts are defined as motor vehicles under this provision.

Defendant's second argument pertains to the Ohio Consumer Sales Practices Act. Ohio Rev. Code § 1345 *et seq.* This argument fails because

### III. *Analysis*

Defendant has acknowledged that he defaulted on his yacht lease. The question presented is Plaintiff's remedy under the lease agreement and the applicable law. Such questions are matters of law for the court to decide. I will first address the proper interpretation of the lease and the calculation of damages under paragraph 18. Second, I will determine whether the damage clause is valid under Ohio law.[3] Having discerned the proper legal principles for determining Plaintiff's damages, I will then calculate Plaintiff's relief.

### A. *Interpretation of Paragraph 18:*

■ Subsection 18(b) of the subject lease governs Defendant's default. Contrary to the position of Defendant, the plain language of paragraph 18 clearly provides that there is a distinction to be made between early termination and default. This provision is entitled **"EARLY TERMINATION *OR* DEFAULT,"** not **"EARLY TERMINATION *AND* DEFAULT."** (Emphasis added). Paragraph 18 is then divided into three subsections noted as (a), (b) and (c). Subsection (a) provides that there must be a written request to terminate the lease early and that such a request may be approved or disapproved at lessor's option. Subsection (a) limits such early termination to when the lessee is "not in default," thereby maintaining the distinction between early termination and default established in the provision's title.

Subsection (b) discusses default and provides that if the lessee defaults, lessor

> will have all the rights and remedies provided by law. We will have the right to terminate the Lease and take the Vessel without demand and to sue you for damage.... Our retaking of the Vessel does not release you from any obligation under the Lease.

This subsection does not mention early termination and clearly provides the lessor's remedies if the lessee defaults on the lease.

Finally, subsection (c) discusses early termination of the lease and provides the terms and requirements for early termination. Subsection (c) never uses the term "default." Clearly, the subject lease consistently treats early termination and default as separate situations, providing remedies for default in subsection (b) and the terms of early termination in subsections (a) and (c).

■ In addition to conforming to the plain language of the lease, this interpretation is supported by a cardinal rule of contract interpretation. It is a fundamental rule that the entire contract, and each of its provisions, must be given meaning and effect if that can consistently and reasonably be done. 17A Am.Jur.2d *Contracts* § 386 (1991). To interpret subsection 18(c) as addressing both early termination and default would render subsection 18(b) superfluous in contravention of this principle.

Defendant contends that various documents he received from First Federal, the RTC, and Plaintiff's collection manager demonstrates that there was an agreement as to how the lease would be interpreted or in the alternative that they establish a modification of the contract. Defendant is misguided. At the time the payoff sheet was completed by First Federal, Defendant was behind one payment on the lease. It is unclear when Plaintiff requested this payoff amount[4] but it appears he had not yet been found to be in default. Consequently, First Federal permitted him to pursue early termination under subsections (a) and (c) of the lease. Defendant is now in default and therefore this early termination payoff sheet is no evidence as to how the lease should be interpreted.

More important, even if I found that the payoff sheet was evidence of an agreement between Defendant and his bank as to how

---

it depends upon the success of Defendant's Lease Purchase Agreements Act argument. Moreover, a dispute between a lessor and lessee regarding the interpretation of a lease does not amount to an unfair or deceptive practice.

3. The lease agreement provides in paragraph 25 that the lease "shall be construed, interpreted and determined by the laws of the State of Ohio."

4. Defendant did testify that when he made this request he was *anticipating* a cash flow problem.

the lease should be interpreted, my consideration of this agreement is forbidden by the *D'Oench, Duhme* doctrine. This doctrine, essentially codified at 12 U.S.C. § 1823(e), provides that side agreements between a borrower and a failed savings and loan regarding the terms of a loan agreement are void unless they are in writing. *Hall v. Federal Deposit Insurance Corp.*, 920 F.2d 334, 338 (6th Cir.1991). This "in writing" requirement is narrowly construed; the writing must be clear and provide the basic structure of the agreement. *See Resolution Trust Corp. v. Daddona*, 9 F.3d 312 (3rd Cir.1993). It is unclear from its face what the First Federal payoff sheet means. Without more, it cannot serve to modify the clear meaning of the lease agreement.

■ A contract can be modified with the assent of both parties. *Nagle Heating & Air Conditioning Company v. Heskett*, 66 Ohio App.3d 547, 550–551, 585 N.E.2d 866, 868 (1990). However, there is no evidence of a meeting of the minds between Defendant and the RTC. The letters from the RTC are clearly part of settlement discussions between the RTC and Defendant. In fact, the letter dated August 2, 1993 begins with the statement "Thank you for the settlement offer of $150,000, but the credit committee will not accept." As settlement discussions rejected by Defendant, these letters cannot serve as a modification of the original lease agreement.

Finally, Defendant argues that the November 10, 1994 letter of Plaintiff's own collection manager establishes that subsection 18(c) governs defaults under the lease. It is true that this letter states that Defendant's obligations for his default are governed by subsection 18(c). When questioned about this, Plaintiff's collection manager testified that he simply made a mistake. If Defendant had relied upon this mistake (or the letters from the RTC) and failure to enforce this error would result in a fraud or injury to the Defendant, I would be obliged to enforce a modification to the lease. *Smaldino v. Larsick*, 90 Ohio App.3d 691, 697–699, 630 N.E.2d 408, 412–13 (1993). However, there is no evidence that Defendant relied upon this letter or that an injustice results by not

enforcing the terms of the letter. Throughout his financial problems, Defendant has waited for a sweetheart deal to settle his default. In electing to passively await the arrival of better fortune, Defendant cannot now argue that a modification of the lease occurred.

### B. *Subsection 18(b) and Ohio Law:*

■ Subsection 18(b) of Plaintiff's lease provides a broad set of remedies for default. Of particular concern, it permits a lessor to repossess the subject chattel and sue for damages, including all obligations under the lease. Moreover, there is no requirement for the lessor to mitigate damages. Ohio courts have held such a damage clause is punitive and as such violates public policy. Subsection 18(b) is therefore invalid.

The principal case in Ohio on the resolution of chattel lease disputes is *Frank Nero Auto Lease, Inc. v. Townsend*, 64 Ohio App.2d 65, 411 N.E.2d 507 (1979). In that case, the lessee defaulted on the lease agreement after making only five of the thirty-six monthly payments owed. The lessor repossessed the vehicle, sold it, and then sued the lessee to collect the outstanding payments due under the lease agreement. These actions were all provided for under the terms of the lease agreement.

The court in *Townsend* recognized that the parties to a lease have the right "to contractually provide for repossession and the acceleration of future rents where the stated damages bear a reasonable relationship to actual damages or where the lessor has an obligation to mitigate damages by reselling or reletting the leased chattel." *Townsend*, 64 Ohio App.2d at 68–70, 411 N.E.2d at 511. However, the court found the subject lease to violate Ohio public policy because its damage clause did not reflect the lessor's actual damages. *Id.* Specifically, the damage clause permitted the lessor to repossess and to accelerate future rents without requiring the lessor to mitigate damages, i.e., without requiring the lessor to credit the accelerated rentals with any net proceeds from selling the repossessed vehicle.

After establishing the rule requiring mitigation, the opinion in *Townsend* improvidently established a general rule for calculating damages where a provision in a lease for the payment of unaccrued rents is ruled invalid:

[W]here a provision in a lease for the payment of unaccrued rents is invalid, the formula for calculating damages where the ... vehicle is repossessed is all unpaid rent which has accrued at the time of repossession, interest on those accrued rental payments and costs of repossession.

*Townsend*, 64 Ohio App.2d at 71–72, 411 N.E.2d at 512–13. While this rule provided the lessor in *Townsend* adequate damages, it will not do so in other fact patterns. When the lessee in *Townsend* defaulted, he owed approximately $8,261 on the lease.[5] The court apparently denied the lessor these payments as a double recovery because it had recovered $7,000 in the sale of the vehicle and would receive approximately $1,096 in the judgment.[6] However, in cases such as this, where the value of the repossessed vehicle is much less than the value of the future payments, it would be unjust to limit a lessor's recovery to the sale proceeds of the repossessed vehicle. Plaintiff sold the subject yacht for $166,500.[7] At the time of Defendant's default, he owed $313,579 in future rent payments. To limit Plaintiff's recovery to the $166,500 recovered in the yacht sale would deny Plaintiff more than $140,000 in actual damages.

The error of the court in *Townsend* was subsequently recognized in *First National Bank of Cincinnati v. Cianelli*, 73 Ohio App.3d 781, 598 N.E.2d 789 (1991). In that case, the lease permitted the lessor to recover future rents, sale proceeds, and did not require mitigation. As such, it violated the rule of the *Townsend* case and plaintiff

should have been limited to the sale proceeds of the subject chattel. However, the court ruled:

In the present case, although there was no express provision in the lease, First National sold the car and credited Cianelli with the net proceeds of the sale. Therefore, it could still recover all payments due under the lease even though it had repossessed the car. The total rent due under the lease less the sale proceeds represented actual damages, not a penalty or a double recovery.

*Cianelli*, 73 Ohio App.3d at 786, 598 N.E.2d at 793–94. I conclude that the guiding principle in these Ohio opinions is that the relief provided by a damage clause must bear a reasonable relationship to the lessor's actual damages. Stated in the negative, a damage clause cannot impose a penalty or provide a double recovery for the lessor's loss. Whether a lessor's recovery should be limited to the proceeds of a repossession sale depends upon whether such proceeds represent the lessor's actual damages.

### C. *Plaintiff's Damages:*

█ Plaintiff admits that the damage clause in this case permits recovery of future rents, proceeds of a repossession sale, and does not require the lessor to mitigate damages. Under *Townsend*, this damage clause is invalid under Ohio law as a violation of public policy. Plaintiff is therefore precluded from recovering both future rent payments and the sale proceeds of the yacht.

However, Plaintiff is not limited to a recovery of the sale proceeds of the yacht. To so limit Plaintiff's recovery would not prevent a double recovery. On the contrary, it would cheat Plaintiff of its actual damages. There-

---

5. The *Townsend* lease was for 36 months requiring a monthly payment of $266.48 for a total of approximately $9,593. As of January 1, 1976, defendant had made five payments totaling $1,332. Hence, Defendant still owed $8,261 on the lease as of that date.

6. The figure of $1,096 represents the amount of unpaid rent due at the time the vehicle was repossessed.

7. Defendant argues that the appraised value of the yacht was at least $235,000 based upon two advertisements for used, 44-foot Viking yachts. However, Defendant presented no evidence that Plaintiff's sale of the yacht was commercially unreasonable. I find as a matter of law that the sale price of the yacht reflects its fair market value.

fore, I award Plaintiff the difference in value between the future rents and the sale proceeds of the yacht.[8]

■ Plaintiff has also requested interest and attorney fees. It is an elemental principle of contract law that damages based on interest are recoverable. *S & D Mechanical Contractors, Inc. v. Enting Water Conditioning Systems, Inc.,* 71 Ohio App.3d 228, 593 N.E.2d 354 (1991). This is especially true when a breach of contract consists of failure to pay money because "the interest actually represents the value lost on the use of the money." *Id.* Therefore, Plaintiff's request for interest is granted on those payments past due at the time of judgment. The parties did not contract in the lease for an applicable interest rate. In Ohio, when an interest rate is not so provided, such rate is determined by law. *Prepakt Concrete Co. v. Koski Construction Co.,* 60 Ohio App.3d 28, 30–31, 573 N.E.2d 209, 212 (1989). The statutorily prescribed interest rate of Ohio has been ten per cent per annum since 1982. Ohio Rev.Code § 1343.03. Consequently, Defendant owes Plaintiff ten percent per an-

num interest on those payments due at the time of judgment.

■ Plaintiff's request for attorney fees is denied. The rule in Ohio is that attorney fees are not recoverable as costs in a contract action. *Walton Commercial Enterprises, Inc. v. Ass'ns, Conventions, Tradeshows, Inc.,* 71 Ohio App.3d 109, 593 N.E.2d 64, 67 (1990). The Ohio Supreme Court has held that "a prevailing party may not recover attorney fees as costs of litigation in the absence of statutory authority unless the breaching party has acted in bad faith, vexatiously, wantonly, obdurately or for oppressive reasons." *Gahanna v. Eastgate Properties, Inc.,* 36 Ohio St.3d 65, 521 N.E.2d 814, 816 (1988). Given Defendant's good faith litigation of this suit and the absence of statutory authority, attorney fees will not be awarded.

Finally, the lease provides that Defendant's security deposit is refundable. I will therefore offset the amount he owes by the amount of the deposit. Having established the proper formula for determining Plaintiff's damages, I conclude that he is owed $140,929 plus interest for Defendant's breach of his yacht lease.

| | | |
|---|---|---|
| | Outstanding 102 lease payments: | $313,579 |
| — | Sale price less costs: | $166,500 |
| — | security deposit: | $6,150 |
| | **TOTAL** | $140,929 plus 10% per annum interest on payments past due on the date of judgment |

---

## Conclusion

Defendant defaulted on his lease agreement. While the damage clause of this lease is invalid as a violation of public policy, I conclude that Plaintiff is owed damages of $140,929 plus 10% simple interest on payments past due on the date of judgment. Plaintiff's motion for summary judgment is

granted. Defendant's motion for summary judgment is denied.

IT IS SO ORDERED.

**8.** During the evidentiary hearing I alluded to the use of an amortization schedule and the use of the principal balance of $228,063 as a starting point to calculate Plaintiff's damages. Upon further reflection, I am of the opinion that the more

appropriate course is to calculate the amount owed to Plaintiff on the lease by adding the number of unpaid monthly payments which include interest.