**NATIONAL ENTERPRISES, INC., Plaintiff–Appellee,**

v.

**Paul SMITH, Defendant–Appellant.**

No. 96–1247.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 4, 1997.

Decided May 12, 1997.

Morgan J.C. Scudi (briefed), Jeffrey D. Poindexter (argued), Huth, Lynett & Scudi, San Diego, CA, for Plaintiff-Appellee.

Stephen J. Safranek (argued and briefed), University of Detroit School of Law, Detroit, MI, for Defendant-Appellant, Paul W. Smith.

Before: SILER, COLE, and VAN GRAAFEILAND,* Circuit Judges.

COLE, Circuit Judge.

Defendant appeals the district court's denial of his motion to dismiss and its grant of summary judgment in favor of plaintiff on plaintiff's suit for breach of contract. For the following reasons, we **REVERSE** the district court's denial of defendant's motion to dismiss, **VACATE** its grant of summary judgment in favor of plaintiff, and **REMAND** the case to the district court with instructions to dismiss the suit for lack of subject matter jurisdiction.

I.

On June 29, 1987, Defendant–Appellant Paul Smith ("Smith"), while a resident of Michigan, entered into an Open End Vessel Lease ("the Lease") with First Federal Savings & Loan Association of Toledo, Ohio ("First Federal") for the lease of a new yacht. Pursuant to the Lease, First Federal purchased a yacht from a Detroit, Michigan boat dealer and leased that yacht to Smith for a period of fifteen years. Subsequently, First Federal failed and all of its assets (including the Lease) were taken over by the Resolution Trust Corporation ("the RTC") as receiver.[1] On June 2, 1994, the RTC sold and assigned all of its rights, title and inter-

---

* The Honorable Ellsworth A. Van Graafeiland, Circuit Judge of the United States Court of Appeals for the Second Circuit, sitting by designation.

1. By enacting the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Congress dissolved the Federal Savings and Loan Insurance Corporation ("FSLIC") and removed it as receiver of failed savings institu-

tions. *See* Pub. L. 101–73, 103 Stat. 415. However, Congress then transferred all of the FSLIC's functions and activities in enforcing receivership orders to the Federal Deposit Insurance Corporation ("FDIC"), the RTC, the Office of Thrift Supervision and the Federal Housing Finance Board. *See id.* The Resolution Trust Corporation was established by 12 U.S.C. § 1441a(b).

est in the Lease to Plaintiff–Appellee National Enterprises, Inc. ("NEI").

Pursuant to the Lease, Smith was required to make monthly payments of $3074.30 for a period of 180 months. Smith made payments on the Lease until November 29, 1993, but has made no payments since that date. As a result of Smith's default, NEI took possession of the vessel and sold it.

On July 25, 1994, NEI filed the present suit in the United States District Court for the Eastern District of Michigan to recover damages for Smith's breach of contract, including the sum of the remaining payments, late charges, and interest. In the course of those proceedings, the district court issued two published opinions that form the bases for this appeal.[2]

In the first opinion, on July 19, 1995, the district court denied Smith's motion to dismiss NEI's suit for lack of subject matter jurisdiction. Although the district court concluded that jurisdiction was not appropriate on the basis of admiralty law or diversity of citizenship, the court held that jurisdiction exists in this case because the suit arises under federal law. On January 11, 1996, the district court issued its second opinion, granting NEI's motion for summary judgment on its breach-of-contract claim.

Smith has timely appealed the decisions of the district court.

## II.

■ "In reviewing the district court's determination concerning its jurisdiction, we review the court's findings of fact for clear error and conclusions of law de novo." *Certain Interested Underwriters at Lloyd's, London, England v. Layne*, 26 F.3d 39, 41 (6th Cir. 1994)(citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 326 (6th Cir. 1990)).

■ We also review de novo a district court's grant of summary judgment, using the same standard employed by the district court. *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993); *Kraus v. Sobel*

*Corrugated Containers, Inc.*, 915 F.2d 227, 229 (6th Cir. 1990). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding upon a motion for summary judgment, we must view the factual evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## III.

Smith contends that the district court erred in denying his motion to dismiss NEI's suit because the court lacked subject matter jurisdiction. The district court held that the RTC's assignment of all its rights, title and interest in the Lease included an assignment of its statutory right to sue in federal court, thus creating a federal question upon which subject matter jurisdiction could be based. Smith contends that the RTC's assignment of the Lease could not effectively transfer federal jurisdiction to NEI. We agree.

Pursuant to 12 U.S.C. § 1441a(*l*)(1), "any civil action, suit, or proceeding to which [the RTC] is a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction over such action, suit or proceeding." However, the statute itself does not confer jurisdiction on assignees of the RTC or state whether the RTC may assign the statutory rights conferred upon it. *See* 12 U.S.C. § 1441a(*l*)(1).

In its denial of Smith's motion to dismiss, the district court held that the RTC could assign its right to sue in federal court, just as it may assign several other statutory rights, under the so-called "*D'Oench, Duhme* doctrine." The *D'Oench, Duhme* doctrine takes its name from the decision of the United States Supreme Court in *D'Oench, Duhme & Co., Inc. v. Federal Deposit Ins. Corp.*, 315

---

**2.** *See National Enterprises, Inc. v. Smith*, 913 F.Supp. 534 (E.D.Mich. 1996); *See National Enterprises, Inc. v. Smith*, 892 F.Supp. 948 (E.D.Mich. 1995).

U.S. 447, 456–62, 62 S.Ct. 676, 678–82, 86 L.Ed. 956 (1942), wherein the Court emphasized the strong public policy considerations for protecting the assets of failed banking institutions. To that end, the Supreme Court held that a debtor is estopped from asserting any defense based on an unwritten "side agreement" between the debtor and the original lender that would alter the terms of a debtor's note. *Id.* at 461–62, 62 S.Ct. at 681–82. This holding was subsequently codified in 12 U.S.C. § 1823(e).

Relying upon the public policy considerations expressed in *D'Oench, Duhme* and the common law of assignments,[3] several federal courts have extended to the FDIC's assignees the same rights as the FDIC possesses in enforcing the obligations of a failed institution. Thus, these courts have held that a private entity that purchases the assets of a failed institution from the FDIC is protected against side agreements between a debtor and original lender to the same extent as the FDIC, even though the literal language of section 1823(e) and *D'Oench, Duhme* does not so provide. *See, e.g., Porras v. Petroplex Sav. Ass'n,* 903 F.2d 379, 381 (5th Cir. 1990); *Bell & Murphy & Assocs., Inc. v. Interfirst Bank Gateway,* 894 F.2d 750, 754–55 (5th Cir. 1990). Similarly, courts relying on the policy espoused in *D'Oench, Duhme* have held that the FDIC and RTC may assign several other substantive rights under FIR-REA. *See, e.g., Federal Deposit Ins. Corp. v. Bledsoe,* 989 F.2d 805, 810 (5th Cir. 1993) (applying *D'Oench, Duhme* to allow assignment of the FDIC's six–year extended statute of limitations under 12 U.S.C. § 1821(d)(14)(A)); *Federal Sav. and Loan Ins. Corp. v. Cribbs,* 918 F.2d 557, 559–60 (5th Cir. 1990) (extending the status of a federal holder in due course to private as-

signees of the FDIC and FSLIC); *Federal Deposit Ins. Corp. v. Newhart,* 892 F.2d 47, 50 (8th Cir. 1989) (extending the status of a holder in due course to private parties who acquire notes from the FDIC); *Mountain States Fin. Resources Corp. v. Agrawal,* 777 F.Supp. 1550, 1552 (W.D.Okla. 1991) (allowing assignment of the six–year statute of limitations).

[3, 4] No court, however, has yet extended to a private entity the FDIC and RTC's statutory right to sue in federal court, and we do not do so in this case. Indeed, only two federal courts have addressed the subject in published opinions and both have held that the RTC cannot contractually assign federal jurisdiction to another party absent statutory authorization. *See S1 IL304 Ltd. Liability Co. v. ANB Cust. for LG,* 950 F.Supp. 242, 245 (N.D.Ill. 1996) (holding that no policy justification existed for extending subject matter jurisdiction for private assignee that could enforce its claim in state court); *RTC Commercial Loan Trust 1995–NP1A v. Winthrop Management,* 923 F.Supp. 83, 88 (E.D.Va. 1996) (holding that the right to sue in federal court is "purely personal" and cannot be assigned absent statutory authorization). The statutory provision granting the RTC the right to sue in federal court applies, by its plain language, solely to the RTC and not to its assignees. If Congress had wished to extend the right to sue in federal court to the RTC's assignees, it could have explicitly done so in the statutory language. *See, e.g.,* 40 U.S.C. § 270b(b) (the "Miller Act") ("Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court..."). Indeed, rather than drastically broaden the jurisdiction of

---

**3.** As the United States District Court for the Eastern District of Virginia explained, federal courts extending to the FDIC's assignees the same rights as the FDIC possesses have based their decisions upon:

(1) the common law of assignments, as evidenced principally in Restatement (Second) of Contracts § 336 which establishes the principal that the assignee stands in the shoes of the assignor; and (2) policy considerations underlying the necessity of assuring the broadest

possible market for the assets of failed banks and federally insured depository institutions. *See WAMCO, III, Ltd. v. First Piedmont Mortgage Corp.,* 856 F.Supp. 1076, 1085 (E.D.Va. 1994) (summarizing the expansion of the *D'Oench, Duhme* doctrine in federal case law); *see also* H.Rep. No. 101–54(I), 101st Cong., 1st Sess. 2 at 102 (1989) (noting that Congress enacted FIR-REA to restore public confidence in the savings and loan industry by providing an "orderly disposition" of the assets of failed savings institutions at the best obtainable prices).

the federal courts under FIRREA, Congress has narrowly defined the scope of federal jurisdiction under that act by preventing the FDIC itself from litigating in federal court in certain circumstances. *See, e.g.,* 12 U.S.C. § 1819(b)(2)(D)(i)–(iii) (withdrawing federal jurisdiction in any case (1) to which the FDIC is "is a party other than as a plaintiff. . ."; (2) which involves only the preclosing rights against the failed institution or obligations owing to depositors, creditors or stockholders in the failed institution; and (3) in which the only issue is the interpretation of state law).

Thus, we believe that the district court erred in holding that subject matter jurisdiction existed in this case on the basis of a federal question. Because 12 U.S.C. § 1441a(*l*)(1) applies solely to the RTC, a suit in which an assignee of the RTC is a party does not automatically arise under federal law. However, this court may affirm the judgment of a lower court on grounds other than those relied upon by that court. *See City Management Corp. v. United States Chem. Co., Inc.,* 43 F.3d 244, 251 (6th Cir. 1994); *Hilliard v. United States Postal Serv.,* 814 F.2d 325, 326 (6th Cir. 1987). Accordingly, we next consider whether the district court could have exercised subject matter jurisdiction on other grounds.

### IV.

NEI argues that, even if this case does not present a federal question under 28 U.S.C. § 1331, the district court could have properly exercised subject matter jurisdiction on two alternative bases. Specifically, NEI argues that subject matter jurisdiction exists in this case on the bases of both admiralty and diversity of citizenship. We disagree.

### A. Admiralty

■ NEI first contends that the district court erred in concluding that admiralty jurisdiction did not exist in this case. NEI argues that the Lease in the present case was an agreement for the charter of a vessel and, thus, falls within the admiralty jurisdiction of the district court. Pursuant to 28 U.S.C. § 1333(1), a district court has exclusive subject matter jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." When a district court exercises its admiralty jurisdiction, that court must apply admiralty law, rather than state law, to the case before it. *See, e.g., Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 227, 106 S.Ct. 2485, 2496–97, 91 L.Ed.2d 174 (1986); *see Brotherhood Shipping Co., Ltd. v. St. Paul Fire & Marine Ins. Co.,* 985 F.2d 323 (7th Cir. 1993); *Matter of Arbitration between Holborn Oil Trading Ltd. and Interpetrol Bermuda Ltd.,* 774 F.Supp. 840 (S.D.N.Y. 1991); *C.T. Shipping, Ltd. v. DMI Ltd.,* 774 F.Supp. 146 (S.D.N.Y. 1991); *Sabine Towing & Transp. Co., Inc. v. Merit Ventures, Inc.,* 575 F.Supp. 1442 (E.D.Tex. 1983); *Gercey v. United States,* 409 F.Supp. 946 (D.R.I. 1976), *aff'd,* 540 F.2d 536 (1st Cir. 1976).

■ In determining whether an agreement between two parties constitutes a charter within a district court's exclusive admiralty jurisdiction, a court must first look to the terms of the contract itself. *See Cary Marine, Inc. v. Motorvessel Papillon,* 872 F.2d 751, 755 (6th Cir. 1989). If the terms of the contract indicate that the parties did not intend for their agreement to be considered a charter governed by admiralty law, then the exercise of admiralty jurisdiction is not proper. *See, e.g., Butler Seafood, Inc. v. Gowdy,* 609 F.Supp. 465, 466 (S.D. Fla. 1984) (*cited with approval in Cary Marine,* 872 F.2d at 755).

■ In the present case, admiralty jurisdiction is not proper because the parties clearly did not intend for the Lease to be governed by admiralty law. Section 25 of the Lease states that the Lease "shall be construed, interpreted and determined *by the laws of the State of Ohio.*" (emphasis added). As the district court correctly noted, this provision indicates that neither Smith nor First Federal considered the Lease to be a charter cognizable in admiralty at the time of contracting. Thus, the district court properly concluded that this case does not arise under 28 U.S.C. § 1333(1).

## B. Diversity of Citizenship

 NEI next argues that the district court could have exercised subject matter jurisdiction on the basis of diversity of citizenship. *See* 28 U.S.C. § 1332. Specifically, NEI states that it is a California corporation and contends that Smith is a resident of Michigan. In support of its contention, NEI relies upon a private investigator's report that Smith maintains a Michigan driver's license, is the sole owner and registered agent for a Michigan corporation and is a member of a Michigan yacht club. However, NEI's investigator found no automobiles registered to Smith in Michigan, did not find any place of abode for Smith in Michigan, and never found Smith physically present within the state. In fact, NEI's investigator reported that, "[d]espite intensive investigative efforts, there were no leads developed in this investigation which could confirm a permanent United States residence for [Smith]." Furthermore, Smith presented evidence to the district court that he is no longer a resident of Michigan but is, instead, a domiciliary of the Caribbean Island of St. Maarten. The evidence included an affidavit of his intention to remain in St. Maarten permanently, his tax returns for 1993 and 1994, and copies of his visa application. *See Meyers v. Smith,* 460 F.Supp. 621, 624 (D.D.C. 1978) (holding that litigant's affidavit and IRS acceptance of litigant's claimed status as resident abroad was sufficient to establish that litigant was not domiciled in the United States for purposes of 28 U.S.C. § 1332).

After reviewing the evidence presented by both parties, the district court found that "Smith, although a United States citizen, is not domiciled in any state. He is 'stateless' for purposes of [28 U.S.C.] § 1332(a)(1)." Considering that Smith did present evidence of his intention to remain in St. Maarten and that NEI failed to produce proof of any other permanent residence for him, we do not believe that the district court clearly erred in finding that Smith was not a Michigan resident. *See Layne,* 26 F.3d at 41; *Ohio Nat'l,* 922 F.2d at 326 ("Where a trial court's ruling on [subject matter] jurisdiction is based in

part on the resolution of factual disputes, a reviewing court must accept the district court's findings unless they are 'clearly erroneous' "). Thus, the district court correctly held that subject matter jurisdiction did not exist in this case on the basis of diversity of citizenship.[4]

## V.

For the above reasons, we **REVERSE** the district court's denial of Smith's motion to dismiss; **VACATE** its grant of summary judgment in favor of NEI; and **REMAND** the case to the district court with instructions to dismiss the case for lack of subject matter jurisdiction.

---

4. Because we hold that the district court lacked jurisdiction in this case, we do not reach Smith's

arguments regarding the grant of summary judgment in favor of NEI.