**William M. KING, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 5:00–CV–2667.**

United States District Court,
N.D. Ohio,
Eastern Division.

July 18, 2001.

Elizabeth A. Raies, Tzangas, Plakas, Mannos & Recupero, Gary A. Corroto, Tzangas, Plakas, Mannos & Recupero, Canton, OH, for William M. King, Plaintiffs.

Craig K. Weaver, United States Department of Justice, Tax Division, Ben Franklin Station, Henry J. Riordan, United States Department of Justice, Tax Division, Ben Franklin Station, Washington, DC, Stephen A. Sherman, United States Department of Justice, Tax Division, Ben Franklin Station, Washington, DC, for United States of America, Defendants.

## ORDER

GWIN, District Judge.

On June 18, 2001, Defendant United States of America moved for summary judgment and for dismissal of the tax-related claims asserted against it by Plaintiff William King [Doc. 29]. For the reasons set forth below, the Court denies the United States's motion for summary judgment on King's tax refund claim under 26 U.S.C. § 7422, but grants the United States's motion to dismiss King's unlawful tax rate claim under the United States Constitution.

### I

This tax dispute involves the tax treatment of certain expenses Plaintiff William King incurred in a successful lawsuit. In that lawsuit, King sued Chris Liossis and Rose Ann Da Re, the majority shareholders, officers, and directors of HydroDyne, Inc., a closely-held corporation in which King had a minority interest. Here, Plaintiff King says the legal expenses incurred in pursuing his action against Liossis and Da Re should be capitalized.

HydroDyne engages in the design, manufacture, sale, and service of various equipment. In 1990, HydroDyne's majority shareholders transferred the corporation's only substantial assets—a parcel of land, buildings and equipment—to Liossis in his personal capacity.

This transfer led King to sue Liossis and Da Re in 1992. Suing both individually and on behalf of all HydroDyne shareholders, King asserted claims for unlawful interested voting under Ohio Revised Code § 1701.60(A)(1)(b), breach of fiduciary duties to the corporation and the minority shareholders, usurpation of corporate opportunity, and conspiracy to defraud shareholders.

At trial, King prevailed on his individual claims against Liossis and Da Re. The jury awarded King $187,000 for the loss in value of his HydroDyne stock. During the pendency of a subsequent appeal, the parties settled the case for $215,000, which included both the $187,000 jury verdict and $28,000 in post-judgment interest. King relinquished his HydroDyne stock as part of the settlement.

King received the $215,000 settlement payment in 1995. However, King did not report the settlement payment on his 1995

federal tax return. The Internal Revenue Service ("IRS") discovered this omission when auditing King's return.

When contacted by the IRS, King acknowledged that the $28,000 in post-judgment interest constituted taxable income. But the IRS and King could not agree on the proper tax computation for the $187,000 payment.

The IRS concluded that King had to pay a capital gains tax on $144,437 of the $187,000 settlement payment. Because King had relinquished his HydroDyne stock—a capital asset—as part of the settlement, the $187,000 constituted a gross capital gain. Because King had apparently paid $42,563 for the stock, the net capital gain equaled $144,437.

King disagreed. He insisted the IRS should have further reduced his net capital gain based on the $118,455 in litigation costs he incurred in suing Liossis and Da Re. He said these costs were capital expenditures under 26 U.S.C. § 263. Such capital expenditures increase the basis of a capital asset, and thus reduce the net capital gain realized from the disposition of that asset.

 However, the IRS took the position that King's litigation costs were not capital expenditures under § 263. Litigation costs incurred in the acquisition or disposition of a capital asset are capital expenditures. *Woodward v. Commissioner*, 397 U.S. 572, 575, 90 S.Ct. 1302, 25 L.Ed.2d 577 (1970). But the IRS found that King did not incur the litigation costs to acquire or dispose of his HydroDyne stock, but rather to preserve the value of his stock. Litigation costs so incurred are ordinary business expenses under 26 U.S.C. § 212. Although deductible from ordinary income, business expenses do not reduce the capital gain realized from the disposition of a capital asset.

Accordingly, the IRS issued a Notice of Deficiency to King in the amount of $45,263, which included the taxes King owed for the $28,000 interest payment and a net capital gain of $144,437. King eventually paid the IRS $52,901, an amount including his $45,263 tax assessment plus $7,639 in interest.

After paying the tax assessment and interest, King filed an administrative claim for a tax refund in the amount of $30,489, which represented the reduction in King's tax liability if his litigation costs were treated as capital rather than business expenses. The IRS denied the administrative claim.

This led King to file the present action on October 20, 2000. He sues the United States principally under 26 U.S.C. § 7422, which authorizes suits for the refund of taxes. King also asserts a claim under the United States Constitution, alleging that the IRS applied a confiscatory tax rate on his settlement proceeds.

The United States now seeks summary judgment on King's § 7422 claim under Fed.R.Civ.P. 56. Further, the United States moves for dismissal of King's constitutional claim under Fed.R.Civ.P. 12(b)(6).

## II

Before addressing the merits of the United States's motion, the Court reviews the standards governing both summary judgment under Rule 56 and dismissal under Rule 12(b)(6).

The Court grants summary judgment only when the evidence submitted shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Ultimately, the Court decides "whether the evidence presents sufficient disagreement to require submis-

sion to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All–Lock Co.*, 96 F.3d 174, 178 (6th Cir. 1996) (internal quotations omitted).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the nonmoving party's case. *Waters v. City of Morristown, Tenn.*, 242 F.3d 353, 358 (6th Cir.2001). A fact is material if its resolution will affect the outcome of the lawsuit. *Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 597 (6th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A triable issue involves more than merely some existence of doubt as to the material facts. *Id.*

In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *National Enterprises, Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir.1997).

The Court grants dismissal for failure to state a claim under Rule 12(b)(6) only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *McLain v. Real Estate Bd. of New Orleans*, 444 U.S. 232, 246, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In deciding a Rule 12(b)(6) motion, the Court accepts all of the plaintiff's factual allegations as true and construes the complaint in the light most fa-

vorable to the plaintiff. *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996); *Board of Trustees of Painesville Tp. v. City of Painesville*, 200 F.3d 396, 398 (6th Cir.1999).

### III

### A

The Court first examines Plaintiff King's tax refund claim under 26 U.S.C. § 7422. The resolution of this claim turns on whether the costs King incurred in suing HydroDyne's majority shareholders constitute capital expenditures under 26 U.S.C. § 263 or business expenses under 26 U.S.C. § 212.

In seeking summary judgment, Defendant United States contends that King offers insufficient evidence to justify treating his litigation costs as capital expenditures. The Court disagrees.

■ The United States Supreme Court has endorsed the "origin of the claim" test for deciding whether litigation costs constitute capital expenditures or business expenses. *Woodward*, 397 U.S. at 573, 90 S.Ct. at 1302; *see also United States v. Gilmore*, 372 U.S. 39, 49, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963) (adopting origin of the claim test in deciding whether litigation expense was personal or business). As its name suggests, the origin of the claim test focuses on the origin of the litigation at issue, not its consequences. *Woodward*, 397 U.S. at 577, 90 S.Ct. 1302. If the litigation had its origin in a capital transaction, the expenses related to the litigation are capital expenditures. In contrast, if the litigation had its origin in merely the preservation of a capital asset's value, the related expenses are ordinary business expenses.

The origin of the claim test eschews any concern for the taxpayer's subjective in-

tent in pursuing a legal claim. *Id.* Rather, the test calls for an objective inquiry into the nature and circumstances of the lawsuit. *Estate of Morgan v. Commissioner,* 332 F.2d 144, 151 (5th Cir.1964) (stating that the origin of the claim test considers "the issues involved, nature and objective of the suit in which expenditures were made, defenses asserted, purpose for which claimed deductions were expended, background of litigation, and all facts pertaining to the entire controversy out of which the disputed expenses arose").

The United States Court of Appeals for the Sixth Circuit has considered the application of the origin of the claim test in a factual setting somewhat similar to this case. In *Brown v. United States,* 526 F.2d 135 (6th Cir.1975), the taxpayer sought to deduct as an ordinary business expense the litigation costs incurred in bringing a derivative action against the majority owner of a close corporation. The taxpayer brought the derivative action after learning the corporation's majority owner had committed fraud on the minority shareholders. The taxpayer eventually settled the action, relinquishing her shares of the corporation in so doing.

The IRS insisted that the litigation costs related to the disposition of the taxpayer's stock, and thus treated the costs as capital expenditures. In the subsequent refund action, the district court concluded the taxpayer brought the derivative action to preserve the value of her stock. The court thus held that the litigation costs were ordinary business expenses deductible from the taxpayer's gross income.

On appeal, the Sixth Circuit disagreed. *Id.* at 138–39. The court reasoned that the taxpayer brought the derivative action to determine the value of her stock for pur-

poses of sale. Because the action had its origin in the sale of her stock, the taxpayer could claim the litigation costs associated with the action as capital expenditures.

■ Likewise, in this case, a reasonable juror could find that King's action against Liossis and Da Re had its origin in the disposition of King's HydroDyne stock. King brought suit after Liossis and Da Re divested HydroDyne of its only substantial assets. Under such circumstances, a juror could reasonably find that King's lawsuit implicitly sought to terminate his ownership interest in HydroDyne.

Accordingly, the Court denies the United States's motion for summary judgment on King's tax refund claim. The jury, after considering the factual circumstances surrounding King's lawsuit, will characterize the origin of the suit and thus resolve the merits of King's § 7422 claim.[1]

## B

The Court now turns to Plaintiff King's claim. With this claim, King argues that Defendant United States has imposed a "confiscatory" 84% tax rate on the proceeds of his settlement with Liossis and Da Re.

The United States says King fails to state a claim under the United States Constitution. The Court agrees.

King complains that he has paid $45,623 in taxes on net settlement proceeds of only $53,982. In determining his net settlement proceeds, King assumes that he is entitled to capitalize his litigation costs, therefore reducing his net capital gain on the $187,000 settlement payment to just $25,982. When added to the $28,000 postjudgment interest payment, this net capi-

---

1. The United States insists King's potential recovery on this claim is limited to $30,489, the amount of King's administrative tax re-fund claim. King does not dispute this contention.

tal gain sets King's net proceeds from the settlement at $53,982.

But whether King is entitled to capitalize his litigation costs remains in doubt. The jury will decide this question in resolving King's tax refund claim under 26 U.S.C. § 7422. If the jury decides King can capitalize these expenses, King will receive a tax refund that renders his constitutional claim moot. If the jury finds otherwise, King's net capital gain will equal $144,437, therefore raising his net settlement proceeds to $172,437. King does not suggest a tax of $45,623 on such an amount in any way runs afoul of the United States Constitution.

King's constitutional claim, then, is essentially a rehash of his tax refund claim under § 7422. As a result, the Court dismisses the claim under Rule 12(b)(6).

### IV

Finding a material issue of fact for trial, the Court denies Defendant United States's motion for summary judgment on Plaintiff King's tax refund claim under 26 U.S.C. § 7422. However, because King fails to state a claim upon which relief can be granted, the Court grants the United States's motion to dismiss King's constitutional claim.

IT IS SO ORDERED.