NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0945n.06

Case Nos. 14-3411/14-3431

**FILED**
*Dec 23, 2014*
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| ANTHONY J. KELICH, JR.; NANCY T. KELICH; STEPHEN J. GRIFFITH; MELISSA D. GRIFFITH, | ) ) ) ) |
| Plaintiffs-Appellees, | ) ) |
| v. | ) ) |
| HESS CORPORATION, et al., | ) ) ) |
| Defendants | ) ) |
| and | ) ) |
| HESS OHIO RESOURCES, LLC, | ) ) |
| Defendant-Appellant. | ) ) |
| _____/ | ) |

APPEALS FROM TWO SEPARATE UNITED STATES DISTRICT COURTS IN THE SOUTHERN DISTRICT OF OHIO

Before: MERRITT, WHITE, and DONALD, Circuit Judges

**MERRITT, Circuit Judge.** This diversity case presents the question of when two oil and gas leases providing for two successive five-year terms terminate under paragraphs 2 and 4 of those leases. The two leases are with two separate landowners and have been interpreted by two separate district courts. Those separate cases have been consolidated on appeal because the two leases are similar even though the two district courts did not interpret them consistently.

After these lease agreements were formed, a new drilling technique—hydraulic fracturing ("fracking")—increased the value of the leases. That provided the landowners, the Keliches and the Griffiths, with incentive to escape from the leases in order to renegotiate. They each sued the oil company, Hess, and the two district courts below granted summary judgment in favor of the landowners, determining that each lease had expired under its terms while Hess postponed drilling. After *de novo* review and analysis of the contracts, we reverse the judgments of the two district courts below because the lease terms allow the oil company to delay drilling for a longer period than the district courts allowed.

Paragraphs 2 and 4 of these leases create two successive five-year terms and raise the question of whether Hess may continue to delay any obligation to drill in the second or "additional" five-year term by continuing to make annual "delay rental payments." The issue turns on the interpretation of these two provisions. Paragraphs 2 and 4 describe the duration of the leases and the duties of Hess as lessee and the landowners as lessors, as follows:

> 2. Term of Lease. It is agreed that this lease shall remain in force for a term of five (5) years(s) from this date and as long thereafter as oil or gas . . . is produced from said land by the Lessee, its successors and assigns. Lessee has the option to extend[1] this lease for an additional term of five (5) years(s) from the expiration of the primary term of this lease, and as long thereafter as oil or gas . . . is produced from said land by the Lessee, its successors, and assigns, *said extension to be under the same terms and conditions as contained in this lease*. Lessee, its successors or assigns, may exercise this option to extend if on or before the expiration date of the primary term of this lease, Lessee pays or tenders to the Lessor or to the Lessor's credit [a specified amount].
> . . . .
> 4. Delay Rental Payments. If operations for drilling are not commenced on the leased premises, or on acreage pooled therewith as provided below, on or before twelve (12) months from this date, this lease shall then terminate as to both parties unless Lessee, on or before the expiration of said period, shall pay or tender to Lessor the sum of Five and 00/100 ($5.00) Dollars per net mineral acre, hereinafter called the "delay rental," which shall extend for twelve (12) months the time within which drilling operations may be commenced. *Thereafter,*

---

[1] The earlier-drafted Kelich Lease inconsistently describes the additional period as either "extending" or "renewing" the terms of the lease. That inconsistency does not impact the analysis here.

> *annually, in like manner and upon like payments or tenders, the commencement of drilling operations may be further deferred for periods of twelve (12) months each during the primary term.* Drilling operations shall be deemed to commence when the first material is placed on the leased premises or when the first work, other than surveying or staking the location, is done thereon which is necessary for such operations.

Griffith Lease (emphasis added).

Does the clause in the second sentence of paragraph 2—i.e., "said extension to be under the same terms and conditions contained in this lease"—incorporate during "the additional term of five years" Hess's right to delay drilling by paying the "delay rental payments" provided for in paragraph 4? Or does the limitation of the delay rental payments to the "primary term" in the second sentence of paragraph 4 trump the language of "same terms and conditions" in paragraph 2? It is difficult to see what the "same terms" language of paragraph 2 would refer to if not the "delay rental payments" in paragraph 4. The "same terms" language would refer to "any term" applicable in the primary term like the right of Hess to enter upon the land and drill wells contained in paragraph 3[2] and the limitation on drilling near houses or barns in paragraph 14.[3] There is no limitation on the scope of the "same terms" language that would make it inapplicable

---

[2] **3. Lease Rights Granted**. Lessee shall have and is hereby granted by Lessor, during the term of this lease, the exclusive right to enter upon the above described land to conduct geological and geophysical surveys and explorations, and to operate for, produce and save oil and gas (including coalbed urethane gas, gob gas, casing-head gas and casing-head gasoline) produced in conjunction therewith, and to inject gas, air, water or other fluids into the subsurface strata of said land for the recovery and production of oil and gas; together with the right to drill wells, recondition producing wells and redrill and use abandoned wells on said land for all such purposes; together with rights of way and servitudes on, over, and through said lands for roads, pipelines, telephone and telegraph lines, electric power lines, structures, plants, drips, tanks, stations, houses for machinery, gates, meters, regulators, tools, appliances, materials and other equipment that may be used in exploring for and producing therefrom hydrocarbons of every kind and nature whatsoever, including but not limited to oil, gas, coalbed methane gas, gob gas, casing-head gas, and casing-head gasoline and the injection of gas, air, water or other fluids for the enhanced recovery and production of oil and gas produced in conjunction therewith; together with the right to use oil, gas and water from said land free of cost to Lessee for all such purposes, except water from Lessor's wells or ponds; to remove, either during or after the term hereof, any and all property and improvements placed or located on said land by Lessee, including the right to draw and remove casing; together with the right of ingress, egress, sand regress on, over, and through said land for any of the purposes aforesaid.

[3] **14. Surface Use.** No well shall be drilled nearer than two hundred (200) feet of any house or barn now on said premises without written consent of Lessor. Lessee shall pay for damages caused by Lessee's operations to growing crops on said land. When requested by Lessor, prior to the laying of any such pipeline, Lessee shall bury Lessee's pipeline below plow depth.

to paragraph 4. We therefore conclude that the "same terms" language of paragraph 2 incorporates the delay rental payments of paragraph 4 and thus extends Hess's right to drill during the second five-year term so long as the oil company makes the annual delay rental payments. Accordingly, we reverse the judgments of the district courts below as to the interpretation of these lease provisions.

The district court in the Kelich case based its summary judgment on a related issue: Hess's failure to pay a delay rental payment due at the end of year five along with the payment for the additional five-year term. Although neither party read the lease to require a delay rental payment at the end of year five, the district court held that Hess's failure to tender that delay rental payment terminated the lease.

We agree that a delay rental payment was due at the end of year five, but the district court's determination that the payment error terminated the Kelich Lease misapplies a later paragraph of that lease:

> 9. Notices. Failure to pay or error in paying any rental or other payment due hereunder shall not constitute a ground for forfeiture of this lease and shall not affect Lessee's obligation to make such payment, but Lessee shall not be considered in default on account thereof until Lessor has first given Lessee written notice of the non-payment and Lessee shall have failed for a period of thirty (30) days after receipt of such notice to make payment.

This notice provision clearly applies to circumstances in which Hess paid for the second five-year term but failed to include a payment also due under paragraph 4. Moreover, the Keliches' previous stipulation that "Hess has tendered all payments called for under the Kelich Lease," Kelich Mem. Supp. Pl.'s Mot. Partial Summ. J. 4, suggests that not even the Keliches realized that the payment did not satisfy the lease. Under the terms of the lease, this apparent "error in paying" cannot result in "forfeiture" until Hess receives notice and has an opportunity to correct the error. Because the district court concluded otherwise, we reverse that judgment.

We remand these cases to their respective district courts for further proceedings consistent with this opinion, including the calculation of any extensions of time periods for drilling and payment of rentals due.

**HELENE N. WHITE, concurring in part, dissenting in part.** I concur in the reversal of the judgments but write separately because I do not agree that the contracts are facially unambiguous, and believe that the majority has ruled on the meaning of the contract provisions prematurely.

**I.**

We review a district court's grant of summary judgment *de novo*, using the same standard employed by the district court. *Nat'l Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997) (citations omitted). In deciding a motion for summary judgment, we draw all reasonable inferences in favor of the non-moving party. *See id.*

This contract dispute is governed by Ohio law. In Ohio, oil-and-gas leases are subject to ordinary principles of contract interpretation, *see, e.g.*, *Burner-Morgan-Stephens Co. v. Wilson*, 586 N.E.2d 1062, 1064 (Ohio 1992), and "[e]vidence of a custom or usage existing at the time a contract is made is frequently admitted for the purpose of explaining the contract or ascertaining the understanding of the parties to it, interpreting the otherwise indeterminate intention and acts of the parties, [or] explaining words or technical terms," *Marisay v. Perrysburg Mach. & Tool, Inc.*, 523 N.E.2d 329, 331 (Ohio Ct. App. 6th Dist. 1987) (emphasis omitted). "There is no requirement that an agreement be ambiguous before evidence of a usage of trade can be shown, nor is it required that the usage of trade be consistent with the meaning the agreement would have apart from the usage." *Beaverkettle Farms, Ltd. v. Chesapeake Appalachia, LLC*, No. 4:11CV02631, 2013 WL 4679950, at *15 (N.D. Ohio Aug. 30, 2013) (quoting *92 Ohio Jur. 3d, Usages and Customs; Course of Dealing § 32 (2013))*. "[E]vidence of usage of trade can be admitted for purposes of clarifying an indefinite contractual term, a doubtful term, or a term with a technical meaning." *Id.* (internal quotations and citations omitted). However, "a contract

should only be interpreted consistent with usage of trade if each party knows or has reason to know of the usage and neither party knows or has reason to know that the other party has an intention inconsistent with the usage." *Dana Partners, L.L.C. v. Koivisto Constructors & Erectors, Inc.*, No. 2011-T-0029, 2012 WL 6783637, at *5 (Ohio Ct. App. 11th Dist. Dec. 31, 2012) (internal quotation marks and citations omitted).

## II.

This dispute revolves around the meaning of the contracts, specifically: (1) whether the "primary term" of the lease includes the extended lease period, so that Hess has the right to delay the commencement of drilling during this period by making a "delay-rental payment," (2) whether such a payment is required at the end of the fifth year of the lease in addition to the term-extension payment that is paid to extend the lease, and (3) if both answers are yes, whether Hess is entitled to notice of its failure to pay the delay-rental payment before the lease can be terminated on that basis. Because Hess lost below, we draw all reasonable inferences in its favor on review. *See Smith,* 114 F.3d at 563.

## A.

Regarding the first question, Plaintiffs argue that the primary term of the lease only includes the first five-year term. Plaintiffs acknowledge that Hess has an option to extend the lease for an additional five-year term, but argue, relying on paragraph 2 of the lease, that this additional term only applies upon "the expiration date of the primary term of" the lease. If the additional term only begins once the primary term expires, the argument goes, then the additional term is necessarily distinct from the primary term. And, because the right to delay commencement of drilling in return for payments applies "during the primary term," it does not apply during the second five-year term. Regarding the second question, Plaintiffs argue, relying

heavily on one of the district court decisions that interpreted paragraph 4 of the lease, that *if* the primary term includes the additional five-year term, then delay-rental payments are due between the fifth and sixth years of the lease, because delay-rental payments are required to extend Hess's option to drill during each year of the primary term. Finally, Plaintiffs argue that the leases have terminated on their own because Hess failed to do what was necessary to extend them, not because Hess committed a breach, and therefore Plaintiffs were not required to give Hess notice under the provision requiring notice for Hess's failure to make a required payment.

Hess disagrees and argues that the oil-and-gas industry's customary interpretation of similar contracts should inform interpretation of the leases on both issues. Synthesized, Hess's interpretation of the leases is depicted in the following chart, with the necessary payment corresponding to the year in which it is due:



As shown, Hess argues that the first year and the sixth year of the lease are identical in all respects. If this is so, a payment due in the first year is also due in the sixth year; accordingly, if a payment was not required for the first year, it was not required for the sixth year. This latter point is important in determining whether Hess was required to pay *both* a delay-rental payment *and* a term-extension payment between the fifth year (the end of the non-extended primary term)

and the sixth year (the beginning of the second five-year portion of the primary term), or if the term-extension payment preserved all of Hess's rights between the fifth and sixth years.

Looking at the lease language alone, it is reasonable to interpret the primary term as exclusively the first five-year term (Plaintiffs' argument) *or* the first five-year term plus the additional extended term during which drilling has not commenced (Hess's argument). Similarly, it is reasonable to conclude that a delay-rental payment is due after the fifth year, notwithstanding the term-extension payment, *or* that the term-extension payment obviates the need for the delay-rental payment after the fifth year. Thus, because the leases are capable of multiple-reasonable interpretations, they are ambiguous and, without more, neither Plaintiffs nor Hess is entitled to a decision that the leases have the meaning they advance.

Hess argues that the oil-and-gas industry's customary interpretation of similar leases establishes both that the primary term includes both five-year terms and that a delay-rental payment is not required between the fifth and sixth year. Because usage of trade can be examined to interpret a contract without regard to its ambiguity, *see 92 Ohio Jur. 3d § 32, a court must consider* such evidence before determining the meaning of a contract as a matter of law.

**B.**

In both district court proceedings, Hess essentially argued that the lease is a "typical oil-and-gas lease" and looked to learned treatises to aid interpretation of the leases.[4] In the Kelich case, Hess introduced the expert opinion of Professor John Lowe, an expert in oil-and-gas law, as well as an affidavit from Oran Siers, the "landman" who negotiated the leases' terms with the lessors.

---

[4] This argument was much more developed in the Kelich case below, but learned treatises were cited in both cases.

Pertinent here, Professor Lowe averred that:

> Lease-extension provisions such as the one appearing in [paragraph 2] are common . . . [and in] the custom and usage of the oil and gas industry, a lease extension is an extension of the primary term:  It is part of the option period during which the lessee has time to evaluate and organize the drilling venture.

Thus, he concluded, the lease provides "for an initial primary term of five years with the right of the lessee to extend the primary term for an additional five years, commencing from what would have been, without the extension of the primary term, the expiration of the primary term."

Further, Professor Lowe explained that:

> A delay rental payment is not paid for the first year of the lease extension [because] the extension payment covers the option not to drill during the first year of the extended term (i.e., the Lease's sixth year) such that an additional delay rental is not required for that year.

Put another way, just as Hess did not pay a delay-rental payment upon executing the contract, it would not have to pay a delay-rental payment upon renewing the lease, because "the Lease's primary term is reset and extended for five more years."

Plaintiffs respond that the oil-and-gas industry's interpretation of the terms should not be used to interpret the lease because they were not aware of these specialized terms when they entered into the lease.  Indeed, it is unclear whether the usage of trade will ultimately be admitted to interpret the contracts because it is unclear what information the lessors had at the time they entered into the lease. *See Dana Partners*, 2012 WL 6783637, at *5.  However, at this stage of the proceedings, both sides are entitled to have their version of the facts accepted when defending against the construction put forth by the other.

Thus, in determining whether to hold that the contracts mean what Professor Lowe contends they mean, we must consider that the contracts themselves are not clear and that

Plaintiffs deny that they were informed of the industry gloss Hess now advances; and, conversely, in determining whether to hold that the contracts mean what Plaintiffs say they mean, we must consider that Professor Lowe provided evidence of an industry interpretation that conflicts with Plaintiffs interpretation, and Siers averred: (1) that it was "his practice to explain to all lessors the terms of the lease, including the length of the primary term and the period that the lessee could hold the lease without drilling," (2) that he explained that "the lessee could hold the lease for a period of up to ten years without drilling if the five-year extension were [sic] exercised and annual delay rental payments were made," and (3) that he told the lessors that the term-extension payment, if made, would obviate the need for a delay-rental payment between the fifth and sixth years.

## C.

Notwithstanding the ambiguity in the lease language—which provides both that a lease extension will be "under the same terms and conditions as contained in this lease," and that "drilling operations may be further deferred for periods of twelve (12) months each *during the primary term*"—and Plaintiffs' claims that they were not informed of the industry usage, the majority declares, presumably based on industry usage, that the primary term encompasses the second five-year term, so that the leases allow for delay-rental payments during the extended lease term. Similarly, notwithstanding that the lease language can be reasonably understood both to require a delay-rental payment in the fifth year and to provide that no such payment is necessary upon renewal, and Hess introduced evidence that the industry regards these agreements as not requiring a delay-rental payment for the first year of the renewal, the majority concludes as a matter of law that a payment is required. The majority also gives more life to the

notice provision than the parties may have intended.  I believe these contract-interpretation rulings are premature.

### III.

I agree that the judgments in favor of the Plaintiffs must be vacated.  I would, however, remand for further proceedings consistent with this opinion.